2011 Ark. App. 529

Terence WATTS, Appellant

v.

SEARS ROEBUCK & COMPANY and Indemnity Insurance of North America, Appellants.

No. CA 11–2.

Court of Appeals of Arkansas.

Sept. 14, 2011.

Lee Joseph Muldrow, Little Rock, for Appellee.

RITA W. GRUBER, Judge.

This workers' compensation appeal is brought by Terence Watts, a former automotive service technician, who sustained a compensable injury to his left knee on March 6, 2008, when he fell off a ladder while putting tires into a rack at Sears. Acting pro se, he appeals the decision of the Arkansas Workers' Compensation Commission regarding additional benefits for his injury. He contends that the Commission erred in determining that he failed to prove injuries sustained to his right shoulder and back, entitlement to

medical treatment for right-shoulder and back injuries, and entitlement to additional temporary total disability benefits. In his final point, he contends that the Commission erred in determining that Sears and its insurer were entitled to credit toward payment of permanent partial-disability benefits based upon their overpayment of temporary disability benefits.[1]

 |₂In cases such as this, where the Commission denies benefits because a claimant failed to meet his or her burden of proof, the appellate court will affirm if the Commission's decision displays a substantial basis for the denial of relief. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000); *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). If reasonable minds could have reached the result shown by the Commission's decision, we must affirm. *Sys. Contracting Corp. v. Reeves*, 85 Ark. App. 286, 151 S.W.3d 18 (2004).

At an October 7, 2009 hearing before an administrative law judge, Sears controverted Mr. Watts's claim for additional benefits related to his knee injury and contended that his right-shoulder claims and back problems were not causally related to his accident at work. The law judge ruled that Mr. Watts failed to prove he sustained compensable injuries other than to the knee as a result of the March 6, 2008 incident, and that all medical and temporary indemnity benefits had been paid. Her opinion included the following:

> I find that the conclusions and recommendations by Dr. Clark and Dr. Rooney are consistent with initial history of the work incident as provided by the claimant and the other medical records in this case. I also find that the observations and opinions of Dr. Chakales related to the claimant's right shoulder and back problems are based on the subjective history provided by the claimant and are contradicted by the other medical records and prior inconsistent statements of the claimant in both the initial accident report and emergency room records contemporaneous with his treatment.

She also found that Mr. Watts did not seek medical attention for his right shoulder or back subsequent to the Sears incident until four months later, in July 2008, despite receiving |₃medical care for his left-knee complaints, and that he had indicated at the emergency room that his shoulder problems resulted from "an incident that occurred at home without specific injury a few days prior to his visit to the emergency room." The Commission affirmed and adopted the opinion of the law judge, thus making the opinion its own.

Evidence at the hearing included medical records; testimony by Mr. Watts and Charles John Kozak, general manager of Sears in Pine Bluff; and a printout of indemnity benefits that had already been paid. Medical records preceding Mr. Watts's work-related accident revealed that he sought treatment for injuries to his right shoulder as a result of a fight in July 1996; in May 1997 for injuries to his right wrist; and in November 1997 for injuries to his right wrist and right shoulder after another motor vehicle accident.

---

1. Appellants who proceed pro se are responsible for following rules of appellate procedure and are held to the same standards as attorneys. *Jones v. Smith–Blair, Inc.*, 2011 Ark. App. 148, 2011 WL 693339. We strongly encourage Mr. Watts to review Rule 4–2 of the Rules of the Arkansas Supreme Court and Court of Appeals. Appellees' supplemental abstract and supplemental addendum correct significant deficiencies in the brief filed by Mr. Watts, enabling us to address the merits of the appeal rather than order rebriefing as we otherwise would do.

On March 6, 2008, the date Mr. Watts fell from the ladder, he was seen at Healthcare Plus. Dr. Waseem A. Shah noted that Mr. Watts said his left knee twisted in the accident and his pain level was an 8 out of 10. Dr. Shah observed edema in the knee and reported tenderness upon palpation, and an x-ray confirmed there was moderate effusion. In a note of March 10, 2008, Dr. Shah referred Mr. Watts for orthopedic care and reported that "a significant amount of pain remained in his right [sic] knee."

An office note by Dr. Charles Al Clark, the orthopedist who evaluated Mr. Watts on March 11, 2008, recites the patient's complaint of knee pain from his fall and the doctor's observation of mild effusion in the knee. Dr. Clark reported, "He will not allow me to examine the knee today. I think he is a little bit over-demonstrative when it comes to complaints of pain." Dr. Clark on March 13 stated that Mr. Watts was unable to return to work and was on total temporary disability pending MRI results, which subsequently revealed damage to the left knee. Dr. Clark performed arthroscopic surgery on April 4, 2008, and released Mr. Watts to modified duty on May 7, 2008, noting a need for aggressive daily rehabilitation. Office notes the same day reflect Mr. Watts's complaint of pain at the surgery site, as well as "vague and weird symptoms" and stomach heaviness from taking his GI tract medications. Dr. Clark wrote that the knee had some swelling, mostly due to scarring, but that Mr. Watts needed to use the knee more aggressively and get more aggressive with physical therapy. Dr. Clark stated:

> Terence does not want to go back to work, but having looked at the note from his Workers' Compensation coverage, they have sedentary duty available for him. I think it would be in his best interest to do this. He will have significant limitations on him in that he does not want to bear weight on his L leg at all. I am not sure what the etiology of this problem is[.]

Dr. Clark supported Mr. Watts's request for a second opinion but stated that the biggest problem was the lack of aggressive therapy.

The first record of shoulder problems appears in an emergency-room report of July 1, 2008, which relates Mr. Watts's statement that his right shoulder was bothering him after a home accident several hours earlier. The report shows the reason for visiting the emergency room: "Pain right shoulder. Cannot lift right arm above his head. Had surg on left knee April 4."

In an office visit of July 7, 2008, after the change of physicians was granted, Dr. Harold Chakales noted Mr. Watts's complaints of pain and diagnosed a severe right-shoulder injury. Dr. Chakales requested an MRI of the right shoulder and a new MRI of the left knee, and opined that Mr. Watts had been permanently and totally disabled since his March 6, 2008 injury and was unable to work. After reviewing previous medical records and a left-knee MRI performed on July 14, 2008, and seeing Mr. Watts in August 2008 for severe right-shoulder and left-knee pain, Dr. Chakales reported that the knee had significant injury, atrophy, and instability. He disagreed with Dr. Clark's recommendation for intensive physical therapy, stated that further surgical repair might be needed, recommended an MRI of the shoulder, and opined that Mr. Watts was temporarily totally disabled and unable to work. In notes of a follow-up visit on September 3, 2008, Dr. Chakales wrote that Mr. Watts needed extensive physical therapy and rehabilitation of the left knee and reevaluation regarding further surgery, and that an MRI was needed for his

major problem, right-shoulder pain. Dr. Chakales again opined that Mr. Watts was disabled and unable to work. In notes of an October 1, 2008 visit, Dr. Chakales essentially repeated this information and recited that the patient attributed his shoulder injury to the original accident.

After conducting an independent medical evaluation on December 12, 2008, Dr. Thomas Rooney concluded, "I don't think his complaints of shoulder disability and pain, and his complaints of back trouble are related to the injury in question." Dr. Rooney reported residual impairment to the left knee in the form of limited motion, muscle atrophy, and instability, which he opined would be permanent. He stated that Mr. Watts should be able to return to limited-duty work with restrictions and that the healing period would end at one year, in April 2009.

Dr. Chakales examined Mr. Watts again in November 2008. He disagreed with Dr. Rooney's evaluation, maintaining in a January 26, 2009 letter that the left-knee problems were severe, the knee was non-functional, and Mr. Watts was "totally functionally disabled" and unable to work. The off-work slip of that date states that Watts is "temporarily totally disabled." Dr. Chakales recommended a complete work-up of the left knee and right shoulder and a functional capacity evaluation.

After a clinic visit on February 2, 2009, Dr. Rooney assigned Mr. Watts a permanent impairment of thirty-three percent to the lower extremity. In a final visit of March 9, 2009, Dr. Chakales saw Mr. Watts for shoulder and left-knee pain. Dr. Chakales again recommended intensive physical rehabilitation for the knee and intensive therapy for the right shoulder. He also stated that Mr. Watts remained temporarily disabled and, although his knee had become more stable, needed at least six weeks of physical therapy of the knee for maximum healing.

Mr. Watts testified that Dr. Shah saw him for pain and swelling in the leg the day of his fall, and that he kept telling the doctor that his "whole body was hurting." He testified that on March 11, 2008, he told Dr. Clark that his left knee hurt, he had a previous back injury, and his back was hurting. He testified that he told Drs. Clark and Chakales about his right shoulder, that he also told Dr. Chakales about his leg and back, and that there were no problems with his shoulder before his fall from the ladder at Sears. He said that it was hard for him to do the light-duty work provided by Sears, such as writing, because of needing his medication and because pain from his right shoulder affected his right-handedness. When questioned on cross-examination, he stated several times that he could not recall specific incidents and complaints found in his past medical records.

Charles Kozak testified that Sears repeatedly attempted to return Mr. Watts to work in a job consistent with the sedentary restrictions given by Dr. Clark. Mr. Kozak recounted that the in-house accident report of March 6, 2008, indicated only the left-knee injury and no other complaints. He stated that Mr. Watts worked "some" at sedentary jobs, for which Sears had provided transportation. Mr. Kozak noted that Mr. Watts had been sent home or had left early after complaining of increased pain or drowsiness from medication. Mr. Kozak verified from company records that Mr. Watts had been terminated after he was released to return to work and was determined to have reached maximum medical improvement.

### Right Shoulder and Back

In his first point on appeal, Mr. Watts challenges the Commission's finding that

he failed to prove that he sustained injuries to his right shoulder and back in his fall at work. In his second point, he contends that he is entitled to medical treatment for his right shoulder and back. Any entitlement to medical treatment depends on proof that theses injuries were caused by the incident at work. Therefore, we address the points together.

Mr. Watts asserts that a causal relationship was established between his fall from the ladder and his subsequent physical injury. He complains that the Commission relied solely on the findings or Drs. Clark and Rooney, improperly placing great weight on their medical reports and records while arbitrarily disregarding information provided by Dr. Chakales, the attending primary-care physician. He notes conflicting references to "right" and "left" knee in Healthcare's initial records about his accident, states that he told his doctors about his body hurting "all over" within the time allowed for filing additional compensation, and asserts that his claim for additional compensation was not barred by the statute of limitations.

The appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, *Freeman v. Con–Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001), and the Commission's findings will be upheld unless no substantial evidence supports them. *Pyle v. Woodfield, Inc.*, 2009 Ark. App. 251, 306 S.W.3d 455. Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001). The Commission may not arbitrarily disregard a physician's opinion, but it is within the province of the Commission to reconcile conflicting medical evidence. *Foxx v. American Transp.*, 54 Ark.App. 115, 924

S.W.2d 814 (1996). If reasonable minds could have reached the result shown by the Commission's decision, we will affirm. *Sys. Contracting Corp., supra.*

In *Kivett v. Redmond Co.*, 234 Ark. 855, 355 S.W.2d 172 (1962), a workers' compensation claim for a lower-back injury was filed over two-and-a-half years after a fall resulted in a compensable injury to the claimant's coccyx. The claimant was treated for the injury, released with no permanent disability two months later, then underwent unrelated gall-bladder surgery nearly fifteen months later. Six months after the gall-bladder surgery, she returned with complaints of soreness in her coccyx and returned to the doctor who had cared for her after the fall. He removed bones of the coccyx; two months later he again discharged her as cured with no finding of disability. The doctor's records did not suggest injury other than to the coccyx at the time of the initial fall, nor did his subsequent records refer to back trouble or imply that he believed she had lower-back pain. After she filed her claim, she was sent to Dr. Jones, an orthopedic specialist. The Commission noted the orthopedist's written opinion that "based on the patient's history it must be accepted that the injury in question is related to the patient's low back discomfort." Our supreme court affirmed the denial of the claim, stating

> Dr. Jones's opinion was "based on the patient's history," and the commission . . . indicated its belief that this medical opinion was entitled to no greater weight than the history that the physician had elicited from his patient.

The question is ultimately a simple one of credibility, a matter lying within the exclusive province of the commission. . . . That testimony is not corroborated by other workers. . . . It is impliedly contradicted by every written

medical record that was made during the two and a half years preceding the assertion of this claim. Unless Dr. Jones's single sentence can be so construed, there is in the record no medical opinion purporting to say that a fall such as Mrs. Kivett experienced ... would tend to cause pains in her lower back then or later on. In a case of this kind it is not for us to say that the commission was required to accept the claimant's testimony and on that basis to make an award of compensation. We are bound by the commission's findings upon the disputed question of fact.

*Kivett,* 234 Ark. at 857, 355 S.W.2d at 173–74.

■ In the case now before us, the recommendations and opinion of a primary doctor were based on the patient's subjective complaints, which the Commission found were not brought at the time of the accident. The Commission acknowledged Dr. Chakales's opinion but gave it little weight, noting that it was based on the history Mr. Watts provided some four months after the accident. It was within the province of the Commission to do so.

■ We will not address Mr. Watts's argument concerning the statute of limitations because the Commission, rather than rule on that issue, addressed only whether the accident caused injuries in addition to Mr. Watts's leg injury. Contradictions within Mr. Watts's testimony, contradictions between his testimony and the medical records, and Healthcare's contradictory references to right leg and left leg were matters for the Commission to resolve. The resolution of these issues in the Commission's decision constitutes a substantial basis for denying Mr. Watts's claim that his shoulder and back problems were related to his fall at Sears and that he was entitled to related medical treatment.

*Temporary Total Disability*

■ Mr. Watts contends in his third point that he remains temporarily and totally disabled because Dr. Chakales stated that his healing period had not ended, leaving him off work indefinitely. Mr. Watts asserts that he still needed treatment for his leg, shoulder, and back, as recommended by Dr. Chakales.

■ The healing period is defined by statute as "that period for healing of an injury resulting from an accident," Ark. Code Ann. § 11–9–102(12) (Supp.2011), and whether it has ended is a factual determination to be made by the Commission. *King v. Peopleworks,* 97 Ark.App. 105, 244 S.W.3d 729 (2006). Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. *Ark. State Highway Dep't v. Breshears,* 272 Ark. 244, 613 S.W.2d 392 (1981). If an injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless the refusal is justifiable. Ark.Code Ann. § 11–9–526 (Repl.2002).

The Commission found that Dr. Clark released Watts to return to sedentary work as of May 7, 2008, that Sears made available sedentary work within his restrictions, but that he failed to avail himself of these work opportunities due to his unwillingness to return. The Commission therefore concluded that he was entitled to temporary total disability benefits only from March 6, 2008, until May 8, 2008.

Dr. Clark's release to work states that Sears provided jobs within Mr. Watts's sedentary restrictions and that it would be in his best interest to work despite not

wanting to. In addition to providing the work, Sears provided transportation. Both Mr. Watts and his manager testified that he left this work with various complaints of inability to perform. This evidence constitutes substantial evidence to support the Commission's finding that Mr. Watts failed to avail himself of the opportunity to work and that he was not entitled to temporary disability after May 8, 2008.

*Credit for Overpayment*

In his last point on appeal, Mr. Watts disputes the Commission's determination that Sears and its insurer were entitled to credit toward payment of permanent partial-disability benefits based upon their overpayment of temporary disability benefits. The Commission found that Mr. Watts was entitled to permanent partial disability benefits based on the thirty-three percent impairment rating assigned by Dr. Rooney, and that Sears was entitled to a credit toward payment of the rating based on overpayment of temporary disability benefits from May 8, 2008, until February 2, 2009.

The indemnity ledger introduced into evidence reflects that temporary disability benefits were paid from March 2008 until early February 2009. However, as discussed in the third point of appeal, Mr. Watts's entitlement to temporary total disability ceased on May 8, 2008. The Commission thus correctly awarded credit to Sears for payments made after that date.

Affirmed.

ROBBINS and ABRAMSON, JJ., agree.