James Demetrius MULLINS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000263–MR.

Supreme Court of Kentucky.

Sept. 22, 2011.

Shannon Renee Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice
NOBLE.

Appellant, James Demetrius Mullins, was convicted of murder, tampering with physical evidence and persistent felony offender in the first degree. Appellant was sentenced to 35 years in prison. Appellant's conviction for murder is affirmed and his conviction for tampering with physical evidence is reversed.

## I. Background

On the day of Dominic Faulkner's death, he and T.J. Cayson were dropped off near Whitney Avenue in Lexington by Faulkner's girlfriend so they could buy marijuana. Afterwards, he and Cayson got a ride from an unknown man in a white van and pulled up to 742 Whitney Avenue. Several men were in the yard: Appellant, George Waide, Antwuan Clark, Quincino Wade, and Anderson Porter.

Porter testified that Faulkner got out of the white van and walked over to him where the two talked. Shortly thereafter, Porter heard a gunshot and saw Faulkner's face freeze and his body jerk back. Porter realized Faulkner had been shot and ran to his car. As he got inside, Appellant jumped in the car with him and said "I'm sorry. Drive." Porter testified that Appellant had a shiny object in his hand, but he could not say for certain whether it was a gun. Porter drove to the corner where Appellant jumped out of the car. This version of events was corroborated by T.J. Cayson, who testified that he saw Appellant shoot Faulkner with a black revolver and then jump into a black Chevy Cobalt with Anderson "Ace" Porter, who drove away. Ashley White testified that, while smoking crack cocaine on Whitney Avenue, she saw Appellant shoot Faulkner in the back three times. She left the scene and did not call the police. White testified that, two days later, she saw Appellant and he told her that he shot Faulkner. White stated that Appellant had shot Faulkner because he had stolen $10,000 from Appellant.

According to Shawn Ogden, he and Appellant had arranged to meet near Whitney Avenue in the early afternoon on the day of the shooting, but as Ogden was driving to meet Appellant, he heard sirens. He called Appellant and they agreed to meet at Jacobsen Park instead. There, Ogden purchased and smoked crack cocaine with Appellant. Appellant told him that he would be leaving town and might be gone for awhile. Appellant said, "I'm tired of niggers thinking they can get over on me. I'm not gonna let people eat for free." Ogden further testified that he saw Appellant at Jacobsen Park again a couple

of days later and asked him about Faulkner. Appellant allegedly responded, "I told you I'm not gonna let these people get over on me. I'm tired of 'em. Fuck it. I would've put two more in him if I could've," Over Appellant's objections, Ogden was asked at trial if he had ever seen Appellant with a gun. Ogden claimed that he saw a large silver revolver, either a .357 or a .44, in the passenger seat of Appellant's car in the week prior to the shooting.

Dr. Greg Davis, the medical examiner, confirmed that the cause of death was multiple gunshot wounds. The bullets he extracted were characterized as "medium caliber," meaning greater than .25 caliber, but less than .50 caliber.

Lawrence Piltcher, a forensic science specialist with the Kentucky State Police, testified that all three bullets were fired from the same gun and that they were .44 caliber, hollow-point bullets. No gun was submitted for analysis in this case, because the police never found one. Piltcher testified the bullets could possibly have been fired from either Smith & Wesson or Taurus revolvers, but could not say conclusively. Detective Tim Ballinger of the Lexington Police Department Forensic Services testified that no shell casings or gun were noted at the scene.

Kim Brown testified that, prior to the shooting, she saw Appellant pass by in a car and make a gesture with his hand and finger like a gun toward Faulkner, although there was a crowd of people around and she could not say the gesture was specifically at Faulkner. She testified that Faulkner and Appellant were both at her house days or weeks before the shooting and had words with each other.

Appellant chose not to testify at trial, but the prosecution played a taped interrogation conducted on June 17, 2008. In his interview, Appellant admitted being on the porch of the house at 742 Whitney Avenue at the time of the shooting, but denied any involvement. He also denied there was any bad blood between him and Faulkner. According to Appellant, he was sitting on the porch, smoking marijuana when a white minivan pulled up and Faulkner hopped out. Faulkner was standing in the street talking when a maroon Lincoln pulled up and shots rang out. Appellant then ran from the scene. When told by detectives that eyewitnesses were implicating him as the shooter, Appellant replied, "That's not possible." During this same interview, Appellant stated that it was not his job to turn himself in and said "I don't know what happened. I was getting high."

The jury convicted Appellant of murder and tampering with physical evidence. After the penalty phase, wherein the jury found Appellant to be a persistent felony offender in the first degree, the jury recommended a sentence of twenty-five years for the murder conviction, and five years enhanced to ten years for the tampering with physical evidence conviction. The jury further recommended that the sentences be served consecutively for a total of thirty-five years. Consistent with the jury's recommendation, Appellant was sentenced to thirty-five years.

Appellant appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

Appellant James D. Mullins was convicted in the Fayette Circuit Court of murder and tampering with physical evidence. The jury found Appellant to be a persistent felony offender in the first degree. On appeal, Appellant raises four issues. First, he argues that the trial court denied him due process by improperly instructing the jury on the lesser included offense of first-degree manslaughter under the theo-

ry of intent to cause serious physical injury rather than under the theory of extreme emotional disturbance. Second, he argues that the prosecutor committed misconduct by materially misquoting Appellant's statements to detectives in her closing arguments and by characterizing his behavior as "uncontrollable." Third, he argues that the trial court denied him due process by allowing testimony regarding a handgun seen in Appellant's car several days prior to the shooting. Last, he argues that the trial court denied him due process by failing to direct a verdict of acquittal on the charge of tampering with physical evidence. For the reasons set forth below, Appellant's conviction for murder is affirmed and his conviction for tampering with physical evidence is reversed.

## A. Absence of Extreme Emotional Disturbance Instruction

■ The jury in this case was instructed on manslaughter in the first degree under a theory of intent to cause serious physical injury. Appellant argues that this instruction was not supported by the evidence and that the jury should have been instructed on manslaughter in the first degree under a theory of extreme emotional disturbance instead.

Following the close of the Commonwealth's case, there was a lengthy discussion regarding jury instructions. When asked by the trial judge whether a first-degree manslaughter instruction was warranted, the Commonwealth responded that they wanted the instruction included. Appellant's counsel stated that Appellant did not want any lesser-included offenses in the instruction. Appellant's counsel stated that he disagreed with Appellant on this, but that because Appellant did not want them, he would not ask for any. Appellant's counsel further stated that, due to his position on the matter and to protect the record, he would not object to the Commonwealth's request for the first-degree manslaughter instruction. The trial judge then stated that there was sufficient proof for the manslaughter charge due to evidence that Appellant had been "ripped off" by Faulkner. The trial judge acknowledged that Appellant did not want the instruction, but that it would be included at the Commonwealth's request.

There was then discussion regarding what language the first-degree manslaughter instruction would include. At this point, Appellant's counsel stated, "There hasn't been any evidence of the EED." The trial judge then clarified everyone's understanding of the instructions and asked if anyone had comments. Neither the Commonwealth nor Appellant's counsel responded. The trial judge then discussed the definitions that would be included in the instructions. At this time, Appellant's counsel clearly stated, "EED is out." After discussing the remaining definitions, Appellant's counsel stated he had no objection to the instructions.

This Court finds that this issue was not preserved by Appellant at trial. Appellant has requested review for palpable error under RCr 10.26. However, a review for palpable error is not appropriate because Appellant waived his claim to cite this particular issue as error. The circumstances surrounding the failure to give the EED instruction in this case are similar to those in the recently decided case, *Quisenberry v. Commonwealth*, 336 S.W.3d 19 (Ky.2011). Quisenberry contended that the evidence at his trial failed to support a conviction for facilitation. *Id.* at 37. However, Quisenberry himself had requested the facilitation instruction. *Id.* The Court found that Quisenberry had waived his claim for appeal on the basis of his express representation to the trial court that a

facilitation instruction was warranted based on the evidence. *Id.* at 38.

■ In Appellant's case, his trial counsel not only failed to object to the given instruction, but, in fact, made several emphatic representations to the trial court that his client did not want any lesser-included offense instructions and, more importantly, that there was no evidence in the record to support an EED instruction. As stated in *Quisenberry,* "these alleged errors, therefore, were not merely unpreserved, they were invited." *Id.* at 37. The Court noted that other courts have distinguished "forfeited errors, which are subject to plain [or palpable] error review, and waived errors, which are not … [and] ha[ve] held that invited errors that amount to a waiver, *i.e.,* invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* at 38 (citing *United States v. Perez,* 116 F.3d 840 (9th Cir.1997)). Therefore, "[g]enerally, a party is estopped from asserting an invited error on appeal." *Id.* at 37 (citing *Gray v. Commonwealth,* 203 S.W.3d 679 (Ky. 2006)). Because Appellant specifically asked that no lesser included instruction be given and asserted multiple times that the evidence did not support an EED instruction, he "waived his right to claim on appeal" that he was entitled to the instruction. *Id.*

## B. Prosecutorial Misconduct

■ Appellant alleges as error a statement made by the Commonwealth during closing arguments, which he claims was prosecutorial misconduct. Appellant argues that the Commonwealth materially misrepresented what Appellant had said in his interview with police and that this was prejudicial because it supported the Commonwealth's theory of the case. Appellant argues that this was a continuation of the Commonwealth's flagrant misconduct in her closing argument that began when she, in Appellant's view, commented on his refusal to testify.

■ Counsel has wide latitude during closing arguments. *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006). The longstanding rule is that counsel may comment and make all legitimate inferences that can reasonably be drawn from the evidence presented at trial. *East v. Commonwealth,* 249 Ky. 46, 60 S.W.2d 137, 139 (1933). This Court has explained the appropriate standard of review for prosecutorial misconduct during closing arguments as follows: "We reverse … only if the misconduct is 'flagrant' or if each of the following are satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with sufficient admonishment." *Barnes v. Commonwealth,* 91 S.W.3d 564, 568 (Ky.2002). Additionally, this Court "must always consider these closing arguments as a whole and keep in mind the wide latitude we allow parties during closing arguments." *Miller v. Commonwealth,* 283 S.W.3d 690, 704 (Ky.2009) (quoting *Young v. Commonwealth,* 25 S.W.3d 66, 74–75 (Ky.2000)) (other quotation marks omitted). With these general principles in mind, the Court turns to the statements themselves.

Appellant alleges that the prosecutor committed an error by stating in her closing argument that Appellant claimed "Dominic took three times as much from me as that other guy, that Cameron Walsh guy." The prosecutor's actual statement was as follows: "We don't have to prove motive, but we can infer. We know that Dominic 'ripped off' Chief Egg. [Appellant] said 'Dominic took three times as much from me as that other guy.'" At this point, Appellant objected and was overruled by the trial judge. The trial judge noted at

the bench that each side could argue as to their recollection of the case.

There is nothing to indicate a "flagrant," deliberate, or calculated misstatement by the Commonwealth. While it does appear there could have been a misstatement of the evidence, the language toward the end of Appellant's taped statement to police is confusing. Appellant stated:

Last September, last August or something, a little young man named Chase Downey ripped me off. I mean, he's still walking around. I mean, I'm not going to do nothing to nobody. I'm twenty-nine years old with kids, but this man ripped me off. And I know for a fact he ripped me off and he's still walking around, walk past me everyday. And for what they saying [Dominic Faulkner] did, that nigger took three times as much from me than whatever they saying that he took from whoever.

It is difficult to follow who is being referred to in the latter part of the statement. From the entire context, it appears that Appellant was stating that Downey had taken three times the amount from him that Faulkner had and was still walking around, as an explanation for why he either had no motive to kill Faulkner or at least had a much greater motive to kill someone else. But taken by itself, the last sentence appears to say that Faulkner took three times as much money, as argued by the prosecutor. This is the less logical interpretation from the context, unless Appellant is assumed to have made a ridiculous statement (that is, trying to explain away his motive by demonstrating that he had a greater motive to kill the person who was actually shot). The Commonwealth even conceded that the statement is open to different interpretations and that it is not clear who is being referred to. This Court agrees that the evidence could have been construed either way.

Such claims about the evidence, even though likely mistaken, were not flagrant and "are more accurately characterized as interpretations of the evidence." *Tamme v. Commonwealth*, 973 S.W.2d 13, 39 (Ky. 1998). The trial judge told the parties that each side could argue as to their recollection of the evidence and this Court finds no error in the Commonwealth's recollection.

■ Appellant cited the Commonwealth's statement regarding his failure to testify not as error, but to bolster his argument of their flagrant misconduct. At the beginning of the Commonwealth's closing argument, the prosecutor stated:

We are not going to be able to stand up here and answer all of your questions about what happened the morning Of the murder, during the homicide, or the days that followed after the murder, but you have to remember the reason we can't is because he took off, he is the one who holds all of those answers, no one else.

Appellant's trial counsel immediately objected and the trial judge called both sides to the bench. Appellant's trial counsel asked for an admonition. The trial judge said he had already instructed the jury as to a non-testifying defendant, but also expressed great concern that the prosecutor's statements could be construed as referring to Appellant's decision not to testify. The trial judge then admonished the jury that the fact Appellant had not testified could not be held against him. The Commonwealth then clarified that they were referring to Appellant leaving the scene of the crime, not his failure to testify.

This Court shares the concerns of the trial court with regard to the Commonwealth's statements. However, the Com-

monwealth's statement was not flagrant, nor does it meet the alternative requirements for a reversal under *Barnes.* While Appellant's counsel made a timely objection, as required under *Barnes,* the trial court sufficiently admonished the jury. This alone would prevent reversal under *Barnes,* 91 S.W.3d at 568.

That the evidence of Appellant's guilt was "overwhelming" also bars reversal under *Barnes. Id.* The jury heard testimony from eyewitnesses on the scene who saw Appellant shoot Faulkner, from witnesses who stated Appellant confessed to them; that Appellant was the only one on the scene with a gun; that the bullets extracted from Faulkner were approximately the caliber of the gun that Appellant had been seen with in the week prior to the murder; that Appellant ran from the scene with a shiny object in his hand; that all three bullets extracted from Faulkner were shot from a .44 caliber gun; that Appellant made threatening gestures to Faulkner prior to the murder; and that Appellant and Faulkner had words with one another prior to the shooting. This is more than sufficiently overwhelming evidence for the jury to have found Appellant guilty of murder.

Accordingly, there was no error.

## C. Admissibility of Handgun Testimony

■ Appellant also argues that the trial court improperly allowed testimony regarding a handgun seen in his car several days prior to the shooting.

KRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." All relevant evidence is admissible provided it is not more prejudicial than probative under KRE 403.

■ This Court has previously stated that the admissibility of testimony about a defendant's possession of a firearm was an issue of relevancy. *Major v. Commonwealth,* 275 S.W.3d 706, 713 (Ky.2009) (hereinafter *Major II* ). Factors such as threats, the proximity of threats to the crime, the availability of weapons at the crime scene and the similarity of the crime to the threats were enumerated as factors to consider. There must be a "sufficient nexus, or relevancy, to the means and manner" of the death. *Id.* Specifically, this Court has upheld the admission of evidence of a gun based on testimony that it was "the same size and shape as the weapon used in the commission of the offense." *Major v. Commonwealth,* 177 S.W.3d 700, 710 (Ky.2005) (hereinafter *Major I* ) (citing *Sweatt v. Commonwealth,* 550 S.W.2d 520 (Ky.1977)).

■ As previously discussed, there was testimony at Appellant's trial that he exhibited threatening behavior toward Faulkner in the days prior to the shooting; specifically, he made a hand gesture meant to imitate a shooting gun and also had words with Faulkner prior to the shooting. There was testimony that .44 caliber bullets, which could have come from a revolver, killed Faulkner. The fact that no shell casings were found at the scene, coupled with the testimony that Appellant was seen with a gun of this type prior to the shooting, gives weight to the Commonwealth's assertion that Appellant shot Faulkner. Thus, the handgun testimony meets the test for relevancy under KRE 401 and there is a sufficient nexus under *Major II* for the trial court to have admitted the testimony. This was not the sort of evidence of a gun "with no relation to the crime" that was condemned in *Major I. See Major I,* 275 S.W.3d at 713; *see also*

*Major II v. Commonwealth,* 177 S.W.3d at 710. Therefore, there was no error.

### D. Directed Verdict of Acquittal

 Finally, Appellant claims that the evidence at trial was insufficient to support a conviction for tampering with physical evidence and that he should have been granted a directed verdict. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be unreasonable for a jury to find guilt...." *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). The test this Court must employ, therefore, is whether the jury was clearly unreasonable in convicting Appellant of tampering with physical evidence, given the evidence introduced at trial.

KRS 524.100 provides:

A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

 (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; or

 (b) Fabricates any physical evidence with intent that it be introduced in the official proceeding or offers any physical evidence, knowing it to be fabricated or altered.

It is the Commonwealth's position that Appellant was guilty of tampering based on evidence he removed the murder weapon from the crime scene. The Commonwealth cites testimony by eyewitnesses who established that Appellant was the shooter; that Appellant got into Porter's car immediately thereafter and told him to "drive"; that Appellant had a shiny object in his hand when he got into Porter's car;

that three bullets were removed from the victim, and that these bullets were possibly fired by a revolver; that the Appellant was seen with a revolver days before the murder; that no shell casings or gun were found at the scene; and that a police search at the scene several months after the shooting failed to turn up a gun.

Appellant's trial counsel argued that there was no evidence Appellant had destroyed, mutilated, removed, or altered any evidence in the case and that the fact that the gun was never found was not enough to support the tampering charge. Appellant further argued that the only evidence linking Appellant to the crime came from Cayson and Porter, one describing the gun as black and the other as silver. Appellant noted that the detectives did not attempt to search for the gun until five months after the crime.

In the present case, while the evidence concerning the gun was not conclusive, it was enough for a jury to infer that Appellant shot Faulkner with a gun and then carried that same gun with him to get into Porter's car. *See Dillingham v. Commonwealth,* 995 S.W.2d 377, 380 (Ky.1999). The gun used in the shooting was never found. The evidence presented indicates that the gun was on Appellant's person from the time Faulkner was shot until he entered Porter's car and told him to drive away, and nothing more. Appellant's walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal. *Cf. Commonwealth v. Henderson,* 85 S.W.3d 618 (Ky.2002).

In *Henderson,* the Court addressed the question of whether the defendant had tampered with evidence when, during a police chase, he removed money from the purse he had stolen and placed it in the

insole of his shoe before throwing the purse out the window. *Id.* at 619.

Although it wasn't addressed in *Henderson*, this Court has stated that the "taking away" element of larceny is established "merely by showing the thief had control of the stolen property for a second." *Smallwood v. Commonwealth*, 438 S.W.2d 334, 336 (Ky.1969). Therefore, the defendant in *Henderson* was guilty of theft, but he would not have been guilty of tampering merely by leaving the scene with the purse. Additional evidence was required to establish that the defendant had tampered with evidence under KRS 524.100, aside from his merely leaving the scene with the purse.

The evidence presented to support the charge was that the defendant had removed money from the purse while fleeing police and had put this money into the insole of his shoe. The Court of Appeals in *Henderson* held that the defendant did "not impair [the evidence's] verity or availability in an official proceeding because it was always on his person and the Commonwealth did not prove that there was any impairment of availability." 85 S.W.3d at 620 (quoting Court of Appeals' opinion) (citation omitted, alteration in original). This Court reversed, stating that while "some people do carry money in their shoes ..., they do not ordinarily carry it in the insole of their shoes." *Id.* The Court upheld the tampering charge because of the additional step of putting the evidence in an unconventional place, which manifested an intent to make it unavailable. *Id.*

The fact that evidence remains on the "person" is relevant, but not dispositive. Where the evidence is ultimately located matters. *Id.* Specifically, *Henderson* held that whether the evidence is found in a conventional rather than an unconventional location is important in the determination of whether there was evidence of tampering. *Id.* Moreover, pursuit by the police may be required for a conventional placement of the evidence to become tampering. *Id.*

Therefore, "removal" of evidence under KRS 524.100 must be construed differently for different defendants. If a defendant walks away from the scene in possession of evidence, this does not necessarily lead to a violation of the statute. When a crime takes place, it will almost always be the case that the perpetrator leaves the scene with evidence. If this amounted to a charge of tampering, the result would be an impermissible "piling on."

Instead, intent to impair availability of evidence, believing that an official proceeding may be instituted, is the standard required under KRS 524.100. Where the person charged with tampering is not a defendant, it is easier to infer that by destroying, concealing, mutilating, removing, or altering evidence, there is intent to impair its availability. However, where the person charged is the defendant, it is reasonable to infer that the primary intent when a defendant leaves the scene of a crime is to get *himself* away from the scene and that carrying away evidence that is on his person is not necessarily an additional step, or an active attempt to impair the availability of evidence.

Here, it can be inferred that Appellant was holding the gun when he shot Faulkner and then ran to Porter's car and got in. Clearly, Appellant was attempting to flee the scene. The fact he carried the gun away from the scene with him was merely tangential to the continuation of that crime.

However, this Court must still determine the charge's veracity based on where the gun was ultimately found or based on evidence of an additional act.

Here, there was no evidence of an intentional act of concealment, or even of flight from the police. Admittedly, the gun was never found, but that does not mean it was placed in an unconventional location. There are many "conventional" locations where the gun *could* have been found, specifically, Porter's vehicle where Appellant was last seen with the gun, or Appellant's residence. But there is no evidence in the record to indicate that police searched either of these places. The Commonwealth states in its brief: "The recovery of the gun that was used to shoot Dominic Faulkner so it could be tested is of obvious significance to this case." This is precisely why it is troubling that the police only searched for the gun at and around the crime scene, and that this search took place five months after Faulkner's murder. There could have been no reasonable expectation that the gun would be found there at that late date, and Appellant clearly had nothing to do with that search.

The Commonwealth cannot bootstrap a tampering charge onto another charge simply because a woefully inadequate effort to locate the evidence was made by the police. It is often the case that evidence will not be found. However, it is insufficient to bring a charge of tampering based solely on the fact evidence was not found when there were insufficient steps to locate that evidence, and there is no proof that the defendant acted with the intent to prevent evidence from being available at trial.

This is not to say that failure to locate evidence means that a defendant cannot be charged and convicted of tampering when there is evidence of an active attempt by the defendant that demonstrates intent to impair the availability of the evidence. *See Commonwealth v. Nourse*, 177 S.W.3d 691 (Ky.2005) (throwing bullet casings down a drain); *Williams v. Commonwealth*, 336 S.W.3d 42 (Ky.2011) (swallowing a bag of cocaine).

Because there is insufficient evidence of any intent to conceal, no reasonable jury could have found Appellant guilty of tampering with physical evidence. Appellant's conviction for tampering with physical evidence, therefore, is reversed.

### Conclusion

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed as to Appellant's conviction for murder, reversed as to Appellant's conviction for tampering with physical evidence, and remanded to the trial court for entry of an amended judgment in accordance with this opinion.

All sitting. All concur.