**Esley Dee CORNELIUS, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–CA–001624–MR.

Court of Appeals of Kentucky.

March 9, 2012.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Christian K.R. Miller, Assistant Attorney General, Frankfort, KY, for appellee.

Before TAYLOR, Chief Judge; LAMBERT and THOMPSON, Judges.

*OPINION*

THOMPSON, Judge:

This case is on remand from the Kentucky Supreme Court, which vacated our prior opinion for reconsideration in light of *Mullins v. Commonwealth,* 350 S.W.3d 434 (Ky.2011). Upon reconsideration, we reverse Esley Dee Cornelius, Jr.'s convictions for tampering with physical evidence and first-degree persistent felony offender. The facts leading to Cornelius's convictions began with his involvement in a drug buy arranged by the McCracken County Sheriff's Department.

McCracken County Deputy Sheriff Jesse Riddle received a call from a confidential informant informing him that the informant had been contacted by an individual, later identified as Michael L. Williams, who indicated he would sell cocaine. The informant arranged to meet Williams to purchase $1,500 of crack cocaine. Williams designated the meeting place and told the informant that he would be in a large tan Dodge pickup truck. After the informant was wired with a recording device and his car searched, he departed to the designated buy location and the officers stationed themselves near the location.

Williams arrived at the location as a passenger in the described pickup truck operated by Cornelius. The informant and Williams agreed to meet in a nearby parking lot to complete the drug sale.

After the vehicles parked, Williams exited the passenger door and entered the informant's vehicle. The informant exchanged the $1,500 for a bag appearing to contain crack cocaine and Williams was arrested. Later analysis determined that the substance was not cocaine.

During the transaction between the informant and Williams, Cornelius drove the vehicle from the parking lot to the next block. Detective Tom Crabtree was nearby in a marked cruiser and stopped the pickup truck. Detective Crabtree ordered Cornelius to "show his hands." Cornelius did not comply, was removed from the truck, and was ultimately handcuffed. A passenger in the truck was also removed.

During a pat down search, Detective Crabtree felt a baggie in Cornelius's front pocket. Cornelius was arrested and interviewed by the sheriff's department. During the interview, he was asked if he placed the marijuana in his pocket to hide it from officers. Cornelius replied that if concealment was his intent, he would have placed it in his underwear.

In addition to possession of marijuana, a Class A misdemeanor, Cornelius was convicted of tampering with physical evidence, a Class D felony, and first-degree persistent felony offender. He was sentenced to eleven-years' imprisonment.

Cornelius argues that the trial court erred when it denied his motion for a directed verdict on the tampering charge. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). In conformity with our Supreme Court's decision in *Mullins*, we conclude that it was clearly unreasonable for the jury to convict Cornelius of tampering with physical evidence and reverse.

The elements of the crime are set forth in KRS 524.100:

(1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; or

(b) Fabricates any physical evidence with intent that it be introduced in the official proceeding or offers any physical evidence, knowing it to be fabricated or altered.

In *Mullins*, the Court examined the statutory elements and expanded on its discussion in *Commonwealth v. Henderson*, 85 S.W.3d 618 (Ky.2002). Therefore, we begin our analysis with a review of the *Henderson* decision.

Henderson and another person snatched a purse and were being chased by police when Henderson placed the money from the purse in the insole of his shoe and the purse was thrown from the vehicle. The Court stated the issue as follows: "[W]hether Appellee's act of placing the money in his shoe is sufficient to sustain the tampering with physical evidence conviction." *Id.* at 619.

The Court rejected the notion that a tampering crime has not occurred simply because the incriminating evidence remains on one's person. It stated:

To the extent the Court of Appeals regarded physical separation as a bright line requirement, we disagree. The investigatory process, which includes police chases, can be disrupted by hiding evidence on one's person in an unconventional place such as the insole of a shoe or perhaps within the inner lining of a jacket or other item of clothing or by swallowing it. The Court of Appeals reasoned that concealment in the shoe is the equivalent of placing money in a pocket. We believe there is a difference. When money is placed in a pocket there likely will be no evidence of intent to conceal. On the other hand, when stolen money is placed in a shoe, a jury may properly find the necessary intent.

*Id.* at 619–20. The Court added that in regard to conventional versus unconventional locations, "[t]he type of evidence and the place where it is hidden is relevant." *Id.* at 620. The Court concluded that although some people do carry money in their shoes, the placement of money in the insole of a shoe while being pursued by police was an unconventional location sufficient to support a tampering conviction. *Id.*

In *Mullins*, the Court reaffirmed its decision in *Henderson*. In that case, a handgun used to commit a murder was re-

moved from the crime scene when Mullins fled. Mullins was convicted of murder and tampering with physical evidence. The Court reversed the tampering charge.

The Court stressed that the Commonwealth cannot bootstrap a tampering charge onto another charge when there is no evidence of an active intent by the defendant to impair the availability of evidence. *Mullins*, 350 S.W.3d at 444. The Court explained:

[I]ntent to impair availability of evidence, believing that an official proceeding may be instituted, is the standard required under KRS 524.100. Where the person charged with tampering is not a defendant, it is easier to infer that by destroying, concealing, mutilating, removing, or altering evidence, there is intent to impair its availability. However, where the person charged is the defendant, it is reasonable to infer that the primary intent when a defendant leaves the scene of a crime is to get *himself* away from the scene and that carrying away evidence that is on his person is not necessarily an additional step, or an active attempt to impair the availability of evidence.

Here, it can be inferred that Appellant was holding the gun when he shot Faulkner and then ran to Porter's car and got in. Clearly, Appellant was attempting to flee the scene. The fact he carried the gun away from the scene with him was merely tangential to the continuation of that crime.

*Id.* at 443.

Although the facts in this case are not identical to those in *Henderson* and *Mullins*, the law pronounced is determinative. Cornelius was charged with possession. Although he placed the marijuana in his pocket, it was not an unconventional location even when being approached by police. Cornelius did not attempt to distance

himself from the marijuana and, in fact, remained in possession of the marijuana by placing it in a location where it could be easily discovered by a permissible pat down search. It was not an additional step or active attempt to impair the availability of evidence but was "tangential to the continuation" of the possession offense. *Id.*

We conclude that placing marijuana in an outer clothing pocket is analogous to a shoplifter who hides property on his person to avoid detection. In *Henderson,* the Court observed that concealment is directly incidental to the underlying offense and stated: "The statute requires more. The concealment must be to prevent the evidence from being used in an official proceeding, a fact that is lacking in the typical shoplifting situation." *Henderson,* 85 S.W.3d at 620.

Similarly, concealment of illegal drugs in a conventional location such as a pocket is directly incident to a possessory offense. Were it otherwise, a defendant would be required to have had the illegal drugs in plain view to avoid the offense of tampering with physical evidence. "Piling on" an additional charge to an underlying charge is precisely the situation forbidden by our Supreme Court. *Mullins,* 350 S.W.3d at 443.

Under the facts presented, we hold that the trial court erred when it denied Cornelius's motion for a directed verdict on the tampering with physical evidence charge and reverse. Because we reverse his conviction for tampering, his conviction for first-degree persistent felony offender is also reversed.

ALL CONCUR.