DAVID M. GLOVER, Judge
An administrative law judge (ALJ) found appellant Felecia Davenport was not entitled to temporary total-disability benefits (TTD) for the period from February 17, 2015, to a date to be determined. Specifically, the ALJ found appellee Wal-Mart Stores, Inc.,[1] (Wal-Mart) has at all times made suitable employment available to Davenport within her physical restrictions until such time Davenport left work and never returned, and Davenport failed to prove by a preponderance of the evidence her entitlement to TTD. The Workers'
*438 Compensation Commission (Commission) affirmed and adopted the ALJ's decision.[2] Davenport now appeals to this court, arguing (1) the Commission arbitrarily disregarded evidence and witness testimony and (2) the Commission's decision failed to provide a substantial basis for relief. We affirm the Commission's decision.
Davenport began working as an order filler at a Wal-Mart Distribution Center on October 15, 2014. This job involved labeling boxes of merchandise requested by Wal-Mart stores and placing the boxes on a conveyor belt, which required bending, stretching, lifting, twisting, going up steps, and reaching with her body and arms and/or a metal bar to pull items down. On November 14, 2014,[3] Davenport suffered an admittedly compensable injury to her right thumb and shoulder while attempting to pull a box off a shelf. Davenport completed her shift that day but began to have shooting pain down her right arm that night. She reported she was experiencing pain and was seen by Dr. Shahid Shah of Sherwood Urgent Care on November 18, 2014, where she was diagnosed with a right-shoulder contusion and a sprained right thumb; x-rays of both her shoulder and thumb were negative for fractures or dislocations. A temporary alternative duty assignment (TAD) was completed detailing Davenport's restrictions[4] and offering Davenport work doing label backing or detail cleaning; Davenport checked the box stating she accepted the TAD position offered to her and signed the TAD on November 19, 2014.
Davenport was seen by Dr. Waseem Shah of Sherwood Urgent Care on November 24, 2014, for a follow-up visit. He continued Davenport on light duty. However, on November 30, 2014, Dr. Kenneth Holder of Sherwood Urgent Care took Davenport off work until she could be evaluated for physical therapy. An MRI performed on December 4, 2014, indicated a small bursal-sided tear of the posterior fibers of the infraspinatus tendon.
Davenport began physical therapy on December 5, 2014. She was seen by Dr. Waseem Shah on December 8, 2014, for a follow-up exam; referred to an orthopedist due to her acute right-shoulder pain; and was given a prescription for hydrocodone-acetaminophen tablets. She was also seen the same day for complaints of left-shoulder pain.
A second TAD was generated on December 8, 2014, noting Dr. Shah had released Davenport for light duty in label backing with restrictions of no bending, stooping, or pulling of her shoulder or arms. Davenport marked that she accepted the TAD position and signed the document on December 13, 2014.
Davenport was seen at Sherwood Urgent Care for follow up on December 12, 2014. She was informed she probably would not be given a refill on her pain medication due to her failure to use it as directed. She also continued to complain of left-shoulder and upper-arm pain. She became upset when she was told she could *439 not obtain more pain medication and that workers' compensation would not cover any left-shoulder injury. It was noted to obtain a referral to orthopedic-surgery consultation; when she was told she could not see an orthopedist that day, Davenport left the clinic.
Davenport received physical therapy on December 12 and 19, 2014. A third TAD was completed on December 20, 2014, stating Davenport's restrictions were no right-arm duty; Wal-Mart offered Davenport the jobs of label backing and detail cleaning, but Davenport did not accept or refuse the TAD, nor did she sign it. Davenport was seen by Dr. Waseem Shah on December 22, 2014, who noted she was still having right-shoulder pain with movement.
Davenport was seen by Dr. Kyle Blickenstaff on December 30, 2014, and his examination revealed no tenderness on palpation of the acromioclavicular joint of the right shoulder; no muscle atrophy of the shoulders; no swelling of the right shoulder; no crepitus on palpation of right shoulder; and normal active and passive motion of the right shoulder. However, right-shoulder pain was elicited on elevation through active abduction, elevation through forward flexion on passive abduction, and during a Neer impingement test of the right shoulder. Dr. Blickenstaff found Davenport to be fit for light-duty work with restrictions of no lifting overhead and no pushing and pulling or repetitive reaching with the right upper extremity.
Davenport failed to attend her physical-therapy appointments on December 29, 2014, and January 7 and 8, 2015. A fourth TAD was created on January 5, 2015, offering Davenport label-backing duties and detail cleaning. This TAD incorporated Dr. Blickenstaff's restrictions of modified light duty with no pushing, pulling, lifting more than five pounds, and no overhead reaching for 30 days. Davenport did not accept or refuse this TAD, and she did not sign the document.
Dr. William Rutledge saw Davenport on January 20, 2015, noting she was unable to tolerate limited duty due to pain and discomfort. His examination revealed Davenport's right shoulder was slightly lower than her left; she had pain with far abduction and with external rotation; and the right thumb had mild tenderness with forward flexion. His assessment was right-shoulder strain, neck sprain, and resolved sprain of right thumb; he noted Davenport was to be off work until seen by him again.
Davenport canceled her physical-therapy appointments for January 26 and February 2, 2015. She called the physical-therapy office on February 3, 2015, stating she wanted to wait until the next week because she was medicated and disoriented; however, she also failed to attend her February 9, 2015 appointment.
Davenport was seen by Dr. Rutledge again on February 11, 2015, who released her to attempt limited-duty work beginning February 17, 2015. A fifth TAD was completed on February 27, 2015, offering Davenport work performing label backing and detail cleaning. The right-shoulder restrictions provided by Dr. Rutledge were set forth in the TAD, which were no reaching above shoulder level, no repetitive upper extremity actions, and no pushing, pulling, or carrying. Davenport signed this TAD, adding the statement, "I non concure [sic] due to the job offers are repetitive work. I am willing to work as long as within Dr.'s orders."
Davenport was seen by Dr. Rutledge on March 18, 2015. He noted Davenport attempted to return to work at his recommendation but was called to do repetitive motion of her upper extremities. He further noted Davenport could not push, pull, *440 or carry, and she could not reach above her head. He stated that if there was work within those restrictions, it was safe for Davenport to return to work. However, he also stated Davenport was not to work until he saw her again. On May 21, 2015, Dr. Rutledge noted physical therapy seemed to be helping, but Davenport reported that she still had pain in her neck, right arm, and right thumb. On June 23, 2015, Dr. Rutledge noted Davenport continued to have "lots of problems with pain in the neck, upper back, and right upper extremity." On July 14, 2015, Dr. Rutledge noted continued pain and discomfort in Davenport's right posterior shoulder and right arm, including numbness in her fingers.
Davenport was seen by Dr. Blickenstaff on September 29, 2015, who noted she had missed two appointments. He examined her right shoulder and found no tingling or numbness; no tenderness on palpation of the acromioclavicular joint; no muscle atrophy ; no swelling; no crepitus ; and normal active and passive motion. Dr. Blickenstaff noted a partial-thickness rotator-cuff tendon tear from a December 4, 2014 MRI, but he found Davenport was fit for work with the following restrictions-light duty with no lifting overhead, no pushing or pulling or repetitive reaching with the right upper extremity.
Davenport was seen for a second opinion by Dr. Kirk Reynolds on November 18, 2015, who noted the December 2014 MRI indicated a high-grade partial-thickness tear of the supraspinatus tendon primarily involving the bursal fibers. It was his opinion that greater than 51 percent of Davenport's complaints were directly related to her November 2014 work-related injury; it was reasonable to proceed with right-shoulder arthroscopy with rotator-cuff repair ; and she had not reached maximum medical improvement (MMI). Dr. Reynolds ordered another MRI to determine if the partial-thickness tear had progressed to a full thickness, retracted tear; the second MRI showed no partial-thickness tearing or full-thickness tearing of the rotator cuff tendons, but there was cervical-spine pathology. Dr. Reynolds referred Davenport to Dr. Kate McCarthy for evaluation of her cervical spine; he found she had not reached MMI, but she had no permanent rating for her right shoulder.
At the hearing, Davenport testified she was given restrictions when she was first seen at Sherwood Urgent Care that included no lifting over ten pounds and no pushing or pulling, and she relayed those restrictions to Jeff Bolden, Wal-Mart's human-resource manager at the time. She said Bolden offered her a job doing label backings, a job in which she sat and went through labels to make sure they were all placed on boxes. Davenport said she attempted to perform the job, but her medication made her sleepy, she was having muscle spasms, and the job was repetitive, which was against her work restrictions. Davenport testified when she told Bolden on November 24, 2014, she could not perform the restricted-duty job because of pain, he told her that she had to do it, but after about an hour, she told Bolden she had to leave. Davenport explained that to perform the label-backer job, she would take a stack of 3?x3? labels, sit in a folding chair, and if there was a label that was missed, she pulled it, but she did not have to place it on a box. She claimed she did not walk away from the job-she just could not perform the job. Davenport said she pulled the labels with her wrist and elbows, but she had restrictions stating she could not reach above her shoulder, perform any repetitive upper extremity action, or perform any pushing, pulling or carrying. Davenport admitted Wal-Mart provided a label-backing job for her, but she could not perform that job because it *441 hurt, and the job offered to her was not within Dr. Rutledge's restrictions.
She testified that after she retained an attorney, she was told not to contact human resources or the job site. Davenport claimed she was still in pain after physical therapy. She ultimately had cervical-fusion surgery in May 2016 and rotator-cuff surgery in February 2017; these surgeries were paid for through Medicaid. Davenport stated she was probably still unable to do the label-backer job due to her recent surgeries. Davenport stated she did not drive; however, on cross-examination, she admitted she had driven between Searcy and Little Rock for her doctor appointments, and she also helped drive to her cousin's house in Texas.
Charla Foster, Wal-Mart's current human-resources manager, testified TADs were drafted for people who suffered on-the-job injuries and were based on physician work-status reports; she said restricted-duty work was provided to the extent possible. Foster said if a TAD follows physician restrictions, but an associate states she still cannot perform the work, human resources would be contacted to ensure the paperwork matched what the physician had ordered. Foster was familiar with the label-backing job, stating the position was used for restricted duty; employees were allowed to sit in a chair to perform the job; the purpose of looking through the labels was to ensure no labels were missed, as the labels were used to bill and ship; the labels weighed less than 10 pounds; the labels could be grasped with one hand, although it would take two hands to pull a label off; but hopefully, if the employees were performing their jobs, there would not be many labels that were missed. Foster said the last day Davenport worked was December 13, 2014. On cross-examination, Foster acknowledged a person was required to flip through each of the labels, which was a repetitive sort of job. Foster reviewed the information found in each TAD, noting that while Davenport's last day to work was December 13, 2014, TADs were created on December 20, 2014, January 5, 2015, and February 22, 2015.
When the Commission denies benefits because a claimant failed to meet his or her burden of proof, the appellate court will affirm if the Commission's decision displays a substantial basis for the denial of relief. Watts v. Sears Roebuck & Co. , 2011 Ark. App. 529, 386 S.W.3d 19. On appeal, we view the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Collier v. Walmart Assocs., Inc. , 2018 Ark. App. 129, 544 S.W.3d 69. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Clark v. Williamson G.C., Inc. , 2018 Ark. App. 331, 550 S.W.3d 458. If reasonable minds could have reached the result in the Commission's decision, we must affirm. Watts, supra. Questions regarding the weight and credibility to be given to evidence and witness testimony are within the sole province of the Commission; the Commission is not required to believe the claimant's testimony or the testimony of any other witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. Templeton v. Dollar Gen. Store , 2014 Ark. App. 248, 434 S.W.3d 417.
Davenport first argues the Commission arbitrarily disregarded witness testimony; specifically, she contends the Commission arbitrarily disregarded her testimony that the job offered to her was not within Dr. Rutledge's restrictions, as well as Charla Foster's corroborating testimony that the job offered to her was repetitive. It is true the Commission may not *442 arbitrarily disregard the testimony of any witness or other evidence submitted in support of a claim. Edens v. Superior Marble & Glass , 346 Ark. 487, 58 S.W.3d 369 (2001). However, our review does not convince us that the ALJ arbitrarily disregarded any witness testimony or evidence. The ALJ found,
The claimant's job was going to consist of sitting in a chair and looking through a box for labels. It was clear from the testimony that the so called job of "label backing" was not a heavy lift. Claimant's objections were that it was repetitive and even the witness for the respondent admitted that the action was repetitive. It is clear that although the action was repetitive for the wrist, it was not a repetitive action for the shoulder of the claimant, the actual part of the body of the claimed injury. Consequently, the actual action that the claimant was required to perform was not a repetitive action involving the claimant's shoulder, but of the wrist and hand.
This portion of the ALJ's opinion makes it clear he did not arbitrarily disregard any witness testimony or evidence. Rather, he did not weigh the evidence in the manner Davenport desired. Our court is powerless to reweigh the evidence or to make credibility determinations. Templeton , supra. We affirm on this point.
Davenport also argues that the Commission's opinion does not display a substantial basis for the denial of relief. We disagree. Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. Johnson v. Abilities Unlimited, Inc. , 2009 Ark. App. 866, 372 S.W.3d 838. Arkansas Code Annotated section 11-9-526 (Repl. 2012) provides, "If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justified."
Here, the ALJ found Wal-Mart had at all times made suitable employment available to Davenport within her physical restrictions until such time Davenport left work and never returned. Although Davenport claimed the work offered by Wal-Mart was not within Dr. Rutledge's restrictions, as discussed above, the job was not repetitive for the body part that was injured and for which the restrictions were designed-her right shoulder. Therefore, Wal-Mart did offer Davenport a job within her stated restrictions, and Davenport refused to perform the job. Davenport is not entitled to TTD pursuant to section 11-9-526 because she refused suitable employment within her capacity. See Turcios v. Tyson Foods, Inc. , 2016 Ark. App. 471, 504 S.W.3d 622.
Affirmed.
Vaught and Hixson, JJ., agree.

CMI Claims Management, Inc., is also an appellee; for simplicity's sake, we will simply refer to the appellees as Wal-Mart.

Arkansas law allows the Commission to adopt the opinion of the ALJ as its own, making the ALJ's findings and conclusions its findings and conclusions. Gunter v. Bill's Super Foods, Inc. , 2018 Ark. App. 134, 544 S.W.3d 571. When the Commission adopts the ALJ's opinion as its own, for the purpose of appellate review we consider both the ALJ's opinion and the Commission's majority opinion. Id.

Medical records state that the injury occurred on two different dates-November 14 and November 16, 2014.

The restrictions listed in the TAD are of poor quality and illegible; however, neither party disputes the information contained in the TAD.