# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000406-MR

JEFFREY KINGDON                                                  APPELLANT

|  | ON APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| V. | HONORABLE AUDRA JEAN ECKERLE, JUDGE |
|  | NO. 12-CR-002268 |

COMMONWEALTH OF KENTUCKY                                APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART, REVERSING IN PART AND REMANDING

A jury in the Jefferson Circuit Court convicted Jeffrey Kingdon of murder, first-degree wanton endangerment, and tampering with physical evidence. Consistent with the jury's sentencing recommendations, the trial court fixed his sentence at twenty-five years' imprisonment for murder, to be served consecutively to a one-year sentence for wanton endangerment, for a total of twenty-six years. The trial court fixed his sentence for tampering with physical evidence at one-year imprisonment, to be served concurrently with the twenty-six year sentence.

Kingdon now appeals as a matter of right, arguing that the trial court erred by: (1) allowing testimony about his prior arrests; (2) denying a directed verdict dismissing the wanton endangerment charge; (3) denying a directed

verdict dismissing the tampering with physical evidence charge; and (4) giving initial aggressor and provocation qualification jury instructions. For the reasons set forth below, we affirm the convictions for murder and wanton endangerment, but we reverse the conviction for tampering with physical evidence.

## I. BACKGROUND

In the summer of 2012, Kingdon and his roommate, Martin Keehn, Jr., suspected that Rico Robinson had burglarized their apartment and stolen money from them. Together with a friend named Carla Dowell, they decided to confront Robinson as he rode on a Louisville TARC bus.[1] At the culmination of a heated argument, Kingdon pulled a handgun from his waist and shot Robinson in the head. Robinson died instantly, and Kingdon fled the bus with the gun in hand. Alyssa Luckett, a passenger on the bus, was sitting within feet of the altercation.

Kingdon was arrested two weeks later, but his gun was never recovered. Two video cameras mounted inside the bus recorded the incident. At trial, the Commonwealth played the video from those cameras for the jury. As part of his defense, Kingdon testified that he saw Robinson reach into his own pants and pull out what Kingdon believed was a gun.[2] Kingdon argued that he shot Robinson first because he believed Robinson was about to shoot him. We set forth additional facts as necessary below.

---

[1] Transit Authority of River City (TARC) operates the public bus system in Louisville.

[2] Investigating police officers later confirmed Robinson's possession of a gun.

## II. ANALYSIS

### A. Testimony about Kingdon's prior police involvement was harmless error.

Kingdon first contends that his murder conviction should be overturned because the trial court allowed the Commonwealth to elicit testimony about his prior arrests and encounters with law enforcement. The following exchange occurred as the prosecutor cross-examined Kingdon at trial.

| | |
|---|---|
| Prosecutor: | You knew that all this time people were looking for you? |
| Kingdon: | Yes, I did. |
| Prosecutor: | That the police wanted to talk to you? |
| Kingdon: | I did, but we didn't want to talk to any police by ourselves, we'd never been in any situation like this before, so we . . . |
| Prosecutor: | What do you mean situation like this? You've never talked to police before? |
| Kingdon: | Not like an interrogation situation. |
| Prosecutor: | You've never been questioned by police before? |

Kingdon's counsel immediately objected and complained that the Commonwealth was baiting Kingdon into disclosing evidence of his prior bad acts in violation of Kentucky Rules of Evidence (KRE) 404(b). The trial court ruled that Kingdon had "opened the door" to further questioning relating to his prior involvement with law enforcement, and so Kingdon was forced to admit his prior arrests.

The Commonwealth does not contend that Kingdon's testimony opened the door for a general inquiry into his history of prior police encounters or

3

arrests. Instead, the Commonwealth asserts the error was harmless. Kentucky Rule of Criminal Procedure (RCr) 9.24 provides in part: "The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."

We agree the evidence was improperly admitted, but we also agree that the error was harmless. An error in the admission of evidence is harmless under RCr 9.24 if we "can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (citation omitted).

The fleeting reference to Kingdon's prior involvement with police was of minimal significance in the trial. In light of the fact that the jury saw an actual video recording of the crime as it occurred, including the confrontation and Kingdon's sudden act of raising his gun and shooting Robinson in the head, we conclude without hesitation that this brief and vague reference to Kingdon's prior encounters with police was harmless. Thus we affirm Kingdon's murder conviction.

## B. Kingdon was not entitled to a directed verdict on the wanton endangerment charge.

Kingdon argues that the trial court erred by failing to grant a directed verdict of acquittal on the charge of first-degree wanton endangerment. The decision to grant a motion for a directed verdict is within the trial court's sound discretion. *Wombles v. Commonwealth*, 831 S.W.2d 172, 174-175 (Ky. 1992). "The evidence must be viewed in the light most favorable to the Commonwealth, with the Commonwealth's proof assumed true and questions

4

of credibility and weight left to the jury." *Allen v. Commonwealth*, 395 S.W.3d 451, 456 (Ky. 2013) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). On review, the defendant must show "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Allen*, 395 S.W.3d at 456 (citing *Benham*, 816 S.W.2d at 187).

Kingdon couches the majority of his arguments in light of the first-degree wanton endangerment jury instruction given at the close of evidence. That instruction read:

> You will find Defendant, Jeffery Kingdon, guilty of Wanton Endangerment in the First Degree under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Jefferson County, Kentucky, on or about July 23, 2012, Defendant, Jeffery Kingdon, brandished a loaded firearm near Alyssa Luckett;
>
> AND
>
> B. That he thereby wantonly created a substantial danger of death or serious physical injury to Alyssa Luckett;
>
> AND
>
> C. That under the circumstances, such conduct manifested extreme indifference to the value of human life.

Kingdon argues that he did not brandish the gun prior to shooting Robinson. However, Kingdon's focus on the jury instruction is not the correct approach because it puts the cart before the horse. A directed verdict motion is made before the jury is instructed; thus this Court has said: "A directed-verdict motion is reviewed in light of the proof at trial and the statutory elements of the alleged offense. The directed-verdict question is not controlled by the law as

5

described in the jury instructions, but by the statutes creating the offense." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citing *Lawton v. Commonwealth*, 354 S.W.3d 565, 575 (Ky. 2011)). In other words, the only relevant consideration is whether, under the evidence as a whole, it would be clearly unreasonable for a jury to find Kingdon committed first-degree wanton endangerment according to the statutory elements of that crime.[3]

Kentucky Revised Statute (KRS) 508.060 provides: "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." As for the evidence put on by the Commonwealth at trial, it is of note that the entire crime was captured on video. Because this video is the best evidence of what transpired we describe its contents in detail as they relate to the first-degree wanton endangerment charge.

Four cameras were mounted inside the TARC bus. Two cameras captured the shooting: one viewing the back of the bus from the front and the second viewing the back of the bus from its mid-point. Because the shooting occurred at the back of the bus, the mid-point video offers the more detailed depiction; thus we focus our attention on it. In the description below, we set forth directions from the point of view of the mid-point camera.

---

[3] We note that Kingdon has not raised any argument with regard to the first-degree wanton endangerment jury instruction. Therefore, we do not review its validity.

6

The back bench of the bus has five seats. The shooting victim, Robinson, is seated on the left side of the back bench of the bus leaning against the window. Luckett, who was approximately 13 years old at the time of the shooting, is seated on the right side of the back bench. There are three vacant seats on the bench between Luckett and Robinson. Benches with two seats each are located on each side of the bus in front of Robinson and Luckett. The aisle of the bus runs between those two benches and ends at the middle seat on the back bench. Therefore, in order to reach the aisle, Robinson and Luckett were required to move toward the middle seat on the back bench.

The relevant portion of the video begins with Keehn walking down the aisle of the bus to the back bench. Keehn stops directly in front of the back bench's middle seat and begins arguing with Robinson. Kingdon immediately follows Keehn to the back of the bus and stands in the aisle to the right of and behind Keehn. Kingdon, who is standing between Luckett and the aisle, also begins to argue with Robinson. Approximately 10 seconds later, Dowell walks down the aisle and joins Keehn and Kingdon. Dowell stops to the left and front of Keehn. The argument rapidly escalates, with all of the participants angrily gesturing. Kingdon then reaches into his pocket and pulls out a handgun. He holds the gun at his side in his right hand, which is within approximately two feet of Luckett's head. Luckett, who testified that she saw the gun and feared for her life, gets up from her seat and begins to push her way through Kingdon, Keehn, and Dowell, who are blocking her only path to the aisle. Because she is short, Luckett gets lost in the picture for a second or two as she tries to push

7

her way between Kingdon's right side and the back bench. Kingdon appears to use his left hand to push Dowell toward the front of the bus, and as Dowell moves away, Luckett follows her toward the front of the bus. Keehn then turns and follows Dowell and Luckett. Approximately one second later, and with Luckett no more than three feet from him, Kingdon raises the gun with his right hand and shoots Robinson in the head. Kingdon then turns and, still holding the gun, runs behind Keehn down the aisle and leaves the bus through the side door. This entire episode, from when Keehn enters the scene until Kingdon leaves that bus, lasts exactly 30 seconds.

Viewing this evidence as a whole and in the light most favorable to the Commonwealth and comparing it to the statutory elements above, it would not be clearly unreasonable for a jury to find Kingdon wantonly endangered Luckett. Kingdon brought a loaded gun on a public bus and engaged in a heated argument with Robinson. He then pulled out the gun within arm's length of where Luckett, a teenager, was sitting and held it in his right hand while he continued to shout and angrily gesture with his left hand. While engaged in this argument, Kingdon blocked Luckett's only means of escape, forcing her to physically push against him and between him and Robinson, his intended target. While being jostled by Luckett, as well as by Keehn and Dowell, in a space of approximately one square foot, Kingdon continued to hold a loaded gun within inches of Luckett and pointed at her feet. Kingdon then fired that gun approximately one second after Luckett passed between him and

Robinson, when she was within three feet of him. Finally, Kingdon, gun in hand, ran down the aisle with only a few feet separating him and Luckett.

Viewing Kingdon's conduct in its entirety and in the light most favorable to the Commonwealth, there is sufficient evidence that Kingdon wantonly created a substantial risk of death or serious physical injury to Luckett. Therefore, the trial court did not abuse its discretion when it denied Kingdon's motion for directed verdict. Consequently, we affirm Kingdon's first-degree wanton endangerment conviction.

## C. Kingdon was entitled to a directed verdict on the charge of tampering with physical evidence.

Kingdon contends that he was entitled to a directed verdict on the charge of tampering with physical evidence. The charge was premised on the theory that Kingdon disposed of the weapon used in the shooting of Robinson. To be guilty of tampering with physical evidence under KRS 524.100, the Commonwealth must prove that Kingdon "destroy[ed], mutilate[d], conceal[ed], remove[d] or alter[ed] physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding."

Kingdon argues the trial court should have directed a verdict of acquittal on that charge because no evidence was presented to show he disposed of, concealed, or destroyed the murder weapon. As noted in the previous section of this opinion, a directed verdict is necessary when, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Allen*, 395 S.W.3d at 456.

9

The evidence at trial indicated that immediately after the shooting Kingdon fled from the bus with the gun in his hand. Although police officers looked for the gun in Kingdon's apartment and in his automobile, they failed to locate it. The Commonwealth surmised that because police were unable to locate the gun, Kingdon must have destroyed, concealed, or disposed of it so that it could not be used as evidence against him in a subsequent prosecution. Such an inference, without more evidence, does not support a reasonable finding of guilt.

In *Mullins v. Commonwealth*, the defendant shot the victim and immediately left the scene with the weapon in his possession, but law enforcement officers failed to locate the gun. 350 S.W.3d 434, 436-37 (Ky. 2011). We explained that "walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal." *Id.* at 442. We reiterated the same point in *McAtee v. Commonwealth*: "merely leaving the scene with the murder weapon was insufficient evidence from which a reasonable jury could fairly find Appellant guilty of tampering with physical evidence." 413 S.W.3d 608, 617 (Ky. 2013).

The Commonwealth's theory leads to the paradoxical situation in which the complete lack of evidence concerning the gun becomes sufficient "evidence" to prove that Kingdon destroyed it, concealed it, or otherwise disposed of it. The theory is fundamentally flawed because it unconstitutionally shifts the burden to the defendant to prove his innocence.

10 -

"The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt[.]" KRS 500.070. "Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." *Speiser v. Randall*, 357 U.S. 513, 526 (1958) (citation omitted). If the Commonwealth's inability to explain what happened to the weapon sufficiently established a *prima facie* case of tampering with physical evidence, then the defendant could be found guilty unless he provided evidence to prove he had not "destroyed, concealed, or disposed of" it. Our system works on the opposite premise: the state must present evidence of guilt; the defendant is not required to produce evidence of his innocence.

The fact that the police failed to find the gun does not suffice to prove that Kingdon illegally tampered with it. Since there was no evidence to show that Kingdon tampered with the weapon by concealing, destroying, or disposing of it, a directed verdict should have been entered on the charge of tampering with physical evidence. We reverse Kingdon's conviction on that charge.

## D. The initial-aggressor qualification of the self-protection instruction was properly included in the jury instructions.

Finally, Kingdon argues that the trial court erred by instructing the jury that Kingdon's right to act in self-defense was qualified if he was the initial-aggressor in his confrontation with Robinson, or if he provoked Robinson's use of force.[4] RCr 9.54(1) places a duty on the trial court "to instruct the jury in

---

[4] The provocation instruction is grounded in KRS 503.060(2), while the initial-aggressor instruction is grounded in KRS 503.060(3). Although Kingdon asserts error

11

writing on the law of the case." The trial court must "instruct the jury on every theory of the case that is reasonably deducible from the evidence." *Fredline v. Commonwealth*, 241 S.W.3d 793, 797 (Ky. 2007) (citing *Manning v. Commonwealth*, 23 S.W.3d 610, 614 (Ky. 2000)). Kingdon contends that the evidence at trial did not support the giving of the initial-aggressor instruction. We review the trial court's decision to give or not give an instruction pursuant to the abuse of discretion standard. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015) (allegations of instructional error based upon the claim that the trial court gave an instruction that was not sufficiently supported by the evidence).

The right to act in self-protection is not absolute. Pursuant to KRS 503.060(3), a defendant's use of physical force is not justifiable when he was the initial aggressor, "except . . . when: (a) His initial force was nondeadly and the force returned by the other is such that he believes himself to be in imminent danger of death or serious physical injury." A person who initiates a violent physical confrontation against another person and then injures that person cannot avoid culpability by claiming self-defense, unless his initial aggression was nondeadly and the other person elevated the conflict by responding with deadly force.[5]

A jury instruction on the initial-aggressor qualification is appropriate when the evidence supports the belief that the defendant, who claims to have

---

in giving the provocation instruction, he does not provide a specific argument to support it. In this case, the evidence that justified the initial-aggressor instruction would also authorize the provocation instruction.

[5] KRS 503.060 is structured to avoid the conundrum in which both parties to a violent confrontation are justified to act in self-protection against each other.

acted in self-protection, is the one who initiated the confrontation. Kingdon was clearly entitled to have the jury instructed on the right to act in self-protection because the jury heard evidence that Kingdon did not raise his gun until he believed that Robinson was reaching for a gun. But the jury also heard testimony that Kingdon pursued Robinson by chasing and boarding the bus so that he could confront Robinson with a loaded gun and recover money Robinson stole. Even if Kingdon believed that Robinson was reaching for a gun, the foregoing testimony and the surveillance videos of the shooting provided sufficient evidence for the jury to reasonably find that Kingdon was the initial aggressor. The Commonwealth was entitled to have that theory presented in the jury instructions; thus, the trial court did not abuse its discretion in giving the initial-aggressor instruction.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court in this matter is affirmed in part and reversed in part. Kingdon's murder and wanton endangerment convictions are affirmed. However, the conviction for tampering with physical evidence is reversed, and this case is remanded to the Jefferson Circuit Court for entry of a directed verdict of acquittal on that charge.

All sitting. Minton, C.J., Cunningham, Hughes and Keller, JJ., concur. Venters, J. concurs in part and dissents in part by separate opinion in which Noble and Wright, JJ., join.

13

VENTERS, J., CONCURS IN PART AND DISSENTS IN PART:  Although I fully concur with the Majority's decision to affirm Kingdon's murder conviction, I respectfully disagree with its conclusion that he was properly convicted of wanton endangerment.  The Majority upholds Kingdon's conviction for wanton endangerment based upon its own theory of guilt, a theory which was neither charged by the Commonwealth nor presented to the jury in the jury instructions and, therefore, cannot possibly support the jury's verdict.  Kingdon's one-year sentence for wanton endangerment is an almost negligible addition to his twenty-five year murder sentence, but our distortion of what constitutes the crime of wanton endangerment is far from negligible.

In the indictment brought by the Commonwealth and throughout the Commonwealth's case, all the way through the trial court's instructions and the closing arguments, the only theory of wanton endangerment proffered by the Commonwealth was that Kingdon endangered Luckett by moving his gun from his waistband to his right hand and holding it down by his side a few feet away from Luckett.  The video evidence proved that while Robinson and Luckett sat on the rear seat of the bus, Kingdon stood in front of Robinson, surreptitiously lifting his pistol from his waistband and held it motionless by the side of his leg aimed at the floor.  It was only after Luckett rose from her seat, passed between Appellant and Robinson, and then walked away from Appellant to the front of the bus, that Appellant abruptly raised the gun and shot Robinson.  By that time, Luckett was behind Appellant, toward the front of the bus, in the opposite direction of the line of fire and well-removed from

14

the danger posed by the shooting of the gun. Consistent with the indictment and the Commonwealth's theory of the case, the jury instructions plainly limited the jury to considering only Kingdon's act of holding the gun near Luckett, conduct that could not be reasonably construed as "creat[ing] a substantial danger of death or serious physical injury to [Luckett]" under KRS 508.060(1).

The Majority, however, vaguely recasts the charge and expands the temporal scope of the crime to encompass everything from Kingdon's conduct of bringing a loaded gun onto a public bus to his final act of firing the gun and running away. Most likely, the Commonwealth did not pursue that theory of guilt, and the trial court did not instruct on that theory, because both recognized that a wanton endangerment charge could not be based upon Kingdon's act of getting on a bus with a loaded gun because carrying a loaded gun, even in public, is not in and of itself wanton behavior.[6] Most likely, they also recognized that Kingdon's act of firing the gun could not support the wanton endangerment charge because they understood the fact that Luckett was out of harm's way in the opposite direction when the gun was fired.

We have held that the crime of wanton endangerment can be established by evidence of *firing* a gun "right beside," "point blank," and "within 15 feet" of a victim. *Combs v. Commonwealth*, 652 S.W.2d 859, 860 (Ky. 1983). We have

---

[6] Far from being a wanton act, carrying a loaded gun in public can qualify as a constitutionally protected activity.

never until now held that *holding* a gun in close proximity to another person is wanton endangerment.

We have said that shots fired blindly through a door of an occupied home will support a first-degree wanton endangerment conviction. *Paulley v. Commonwealth*, 323 S.W.3d 715, 724 (Ky. 2010). In contrast, we have held first-degree wanton endangerment was not established by evidence that gunshots were fired into the ceiling and fireplace of a room down the hall from the alleged victim. *Swan v. Commonwealth*, 384 S.W.3d 77, 103-104 (Ky. 2012). We reached that conclusion because there was no evidence that a bullet was fired in the direction of the alleged victim, nor was a gun pointed at the alleged victim. *Id.* at 103. Even if shooting the gun were the gravamen of the crime charged by the Commonwealth, we have never until now held that a bystander could be wantonly endangered by a shot fired in the opposite direction, 180-degrees *away* from her,

Unlike *Combs*, *Paulley*, or *Swan*, the factual issue of this case is not whether Luckett was endangered by Appellant *firing* his gun. The crime as charged by the state was limited to Appellant's *handling* of the gun near Luckett. As the crime is defined in KRS 508.060(1) and clarified by precedent, the act of holding a gun at one's side is not an act that "manifest[s] extreme indifference to the value of human life" or wantonly "creates a substantial danger of death or serious physical injury to another person." Appellant was entitled to a directed verdict on the first-degree wanton endangerment charge.

Noble and Wright, JJ., join this opinion.

16

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General
Office of Criminal Appeals