# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 23, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000467-MR

DATE 8/24/17 *Kim Redmon, DC*

DARRELL BRYAN          APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.          HONORABLE A. C. MCKAY CHAUVIN, JUDGE
NOS. 12-CR-003497-01 AND 14-CR-002741-01

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND REVERSING IN PART

On October 13, 2012, the Appellant, Darrell F. Bryan, engaged in a physical altercation with his drug dealer, Mickel Kimbley, which resulted in Kimbley's death. According to Appellant's former girlfriend and co-defendant, Jennifer Hack, Appellant arranged to meet Kimbley under the guise of a drug deal, and then rob him. Hack drove Appellant to the drug buy location in a van that they borrowed from a friend. After arriving at the scene, Appellant claimed that Kimbley pulled a gun on him. Appellant, who was a cage fighter, punched Kimbley, knocking him unconscious. Multiple witnesses testified that Appellant returned to the van carrying a baseball bat. Appellant and Hack then drove away.

Kimbley was soon discovered by a nearby bystander. He had severe wounds to his head, his pants were pulled down, and his pockets appeared to have been searched. Still alive at the time, Kimbley was transported to the hospital where he died as a result of blunt force trauma to his head.

Appellant subsequently returned to the crime scene and retrieved Kimbley's car, which he then sold to a salvage business. Appellant and Hack proceeded to imbibe in copious amounts of drugs obtained by their ill-gotten proceeds. They were eventually arrested, indicted, and jointly tried.

Appellant's recorded statement to the police was introduced at trial. Therein, Appellant claimed that he did not intend to meet Kimbley that night. Rather, he stated that he was there to meet "some dude" whose name he did not know and who lived in nearby apartments. Appellant repeatedly claimed that when he encountered Kimbley, Kimbley pulled a gun on him. Appellant responded by punching Kimbley once in the head with his right hand. A Jefferson County Circuit Court jury convicted Appellant of murder, first-degree robbery, theft by unlawful taking, and tampering with physical evidence. Hack was acquitted of all charges. All sentences were to run concurrently and Appellant was ultimately sentenced to fifty years' imprisonment. He now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Several issues are raised and addressed as follows.

## Self-defense

We are called upon again to wrestle with the unwieldy and confusing provision of KRS 503.120(1). This statute passed by our legislature in 1974 attempts to place some qualifying restriction upon the subjective standard applied when determining whether a defendant is entitled to the justification of self-defense. KRS 503.050 states that the use of physical force is justified "when the defendant believes that such force is necessary." The qualifying statute we deal with today essentially says that a complete self-defense is not available if the defendant is "wanton or reckless" in such a belief. We start our discussion as to how this case is affected by reciting KRS 503.120(1):

> (1) When the defendant believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, **the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.** (Emphases added).

Appellant claims that the failure of the trial court to give this "imperfect self-defense" was reversible error. We must review this alleged error under the abuse of discretion standard. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015).

We must first look to see what instructions were given. The court did permit a "perfect" self-defense instruction. In addition, the court also instructed the jury on the following homicide charges: 1) murder

3

(intentional or wanton); 2) first-degree manslaughter; and 3) second-degree manslaughter.

The essence of the Appellant's claim is that while the jury could have concluded that Appellant subjectively believed that it was necessary to use force upon Kimbley, it could have found that the force was excessive. In the same vein the jury could have found that the Appellant was wanton or reckless in making such a judgment call that such force was necessary. Under the imperfect self-defense instruction the jury would have been guided to find the Appellant guilty of a lesser offense.

Our most recent and relevant case applying this theory is *Commonwealth v. Hasch*, 421 S.W.3d 349 (Ky. 2013). In *Hasch*, the defendant was convicted of reckless homicide. The Court held that although neither the Commonwealth nor the defendant might be entitled to a "straight" instruction on reckless homicide, she could still be convicted of that charge under an imperfect self-defense theory. In *Hasch*, that instruction was given along with all the lesser included offenses. The jury convicted the defendant under that theory and we affirmed her conviction. In so holding, we discussed KRS 503.120 as follows:

> As provided by the statutory language, the "mistaken belief" component of reckless homicide under the imperfect self-defense theory is based upon the defendant's *subjective* viewpoint: a defendant must actually believe, albeit mistakenly, that the use of deadly force is necessary. But, whether the defendant's failure to perceive the risk of being mistaken was a gross deviation from the standard of care must be based upon an objective viewpoint—what a reasonable person would perceive in the situation.

*Id.* at 358.

4

The reasoning in *Hasch* can be equally applied to crimes involving wanton behavior. For example, the commentary to KRS 503.120 provides:

> [I]f a defendant, in killing another, believes himself in danger of death but is wanton in having such a belief, **he cannot be convicted of murder**. But since manslaughter in the second degree is committed through "wantonness" and since this subsection denies a defendant justification for such an offense, he can be convicted of this lesser degree of homicide.

Therefore, if the jury had determined that Appellant subjectively believed that deadly force was necessary to defend himself, yet also determined that Appellant was objectively wanton in his belief, the jury, under the instructions provided, could have only convicted Appellant of the lesser included offense of second-degree manslaughter.

It is important to point out that the facts of *Hasch* and this case are critically distinguishable. In *Hasch*, there was no question that the defendant intentionally fired the shot that hit the victim between the eyes and that one shot was the cause of his death. Here, however, the unrefuted testimony of the pathologist was that the one blow which Appellant admits striking would not have caused Kimbley's death. In other words, it was the excessive force used which caused the death.

It appears that the foundation for the tendered perfect self-defense instruction and the requested imperfect instruction was Appellant's recorded statement to the police that was introduced at trial. Therein, Appellant claimed that he did not intend to meet Kimbley that night. Rather, he stated that he was there to meet "some dude" whose name he did not know and who lived in nearby apartments. Appellant repeatedly claimed that when he encountered

5

Kimbley, Kimbley pulled a gun on him. Appellant claims he responded by punching Kimbley once in the head with his right fist.

Because the court instructed the jury under a perfect self-defense instruction, the court must have determined that sufficient evidence had been presented from which the jury could determine that Appellant subjectively believed that deadly force was necessary—i.e., the gun narrative.

From this evidence, we believe that the jury could have also determined that Appellant was objectively mistaken as to the level of force needed to repel the alleged threat. If so, then the jury would have been precluded from convicting Appellant of murder and first-degree manslaughter.

Even if the jury determined that Appellant beat the victim with a bat in response to Kimbley pulling a gun on him, the jury could nevertheless reasonably determine that Appellant consciously disregarded a substantial and unjustifiable risk, and that his disregard was a gross deviation from the standard of care. This would still foreclose a murder or first-degree manslaughter conviction, but permit a second-degree manslaughter conviction.

Therefore we conclude that the trial court should have given the imperfect self-defense instruction as called for under KRS 503.120(1).

We now turn to the question of whether such failure to instruct was harmless. An error is harmless under RCr 9.24 if we "can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky. 2009) (citation omitted).

6

It is important to inject here the instruction given in this case on self-protection:

> If at the time an individual, including Mr. Bryan, uses physical force upon another person he believes that person was then and there about to use physical force upon him, he is privileged to use such physical force against that person **as he believes to be necessary in order to protect himself against it,** including the right to use deadly physical force in so doing **but only if he believed deadly physical force to be necessary** in order to protect himself from death or serious physical injury. (Emphasis added).

This is a two-fold subjective standard. Not only can the jury buy the self-defense theory if it only believes that Appellant *thought force was necessary* to protect himself, but also only believe that the Appellant *thought that the force he used was necessary.* The jury only reaches the imperfect self-defense definition if it believes that the Appellant thought the deadly force of the baseball bat was necessary. This would be a complete defense to murder. By finding the Appellant guilty of murder, the jury found beyond a reasonable doubt that Appellant was not privileged to act in self-defense. Therefore, under the instruction defining self-protection the jury found that he did not believe he needed to use deadly force. There was no possibility that he could have been wanton or reckless in forming a belief the jury held he did not have. Herein lies the distinguishing facts from *Hasch.* In that case the jury found the defendant not guilty of murder. Therefore, it bought the defense claim that she did in fact think force was necessary and that the amount of deadly force was necessary. But, she was reckless in thinking the latter. Thus, a conviction for reckless homicide was proper. Here, the Appellant never got past the second hurdle—belief that the deadly force was necessary.

7

Therefore, the trial judge should have given the imperfect self-defense instruction. But, looking back now after the jury convicted the Appellant of murder, we find that such failure was harmless.

Lastly, Appellant contends that the trial court erroneously omitted a "no duty to retreat" jury instruction. We disagree. As we stated in *Hasch*:

> Therefore, in light of the enactment of KRS 503.055 and KRS 503.050(4), we now agree that when presented with circumstances in which the provisions of those statutes are applicable, and upon the request of one of the parties, the trial court must include among the jury instructions, a "no duty to retreat" instruction, similar in form and substance to the one given in this case, which is set out above.

421 S.W.3d at 364.

Neither of those provisions, (KRS 503.055 or KRS 503.050), are at issue here. Appellant provides no additional authority *requiring* such an instruction in the present case. However, "[w]hen evidence of an apparent means of retreat is so intertwined in the evidence in the case that there arises a risk that the jury will be misdirected to give it improper consideration, the court should . . . give an appropriate instruction based upon KRS 503.055(3)[.]" *Id.* at 363.

### Reckless Homicide

Appellant also argues that the court erred in failing to instruct the jury on reckless homicide. To clarify, this is a standalone or "straight" reckless homicide instruction—one that does not result from an imperfect self-defense instruction. *See Hasch*, 421 S.W.3d at 357-58. Even if the trial court erroneously failed to instruct on reckless homicide, any error here is harmless. Appellant was ultimately convicted of murder. Therefore, the jury rejected the

8

standalone lesser included offenses of first and second degree manslaughter, both of which contain a mental element greater than recklessness. There is no way the jury would have found Appellant guilty of reckless homicide had it been so instructed.

## Juror Selection

Appellant asserts that the trial court erred by granting the Commonwealth's motion to strike potential Juror 1355786 for cause. We review for an abuse of discretion. *Little v. Commonwealth*, 422 S.W.3d 238 (Ky. 2013). This issue arose after the prosecutor informed the venire panel that the victim was a drug dealer and asked if anyone would feel that he got what he deserved. Juror 1355786 responded: "If you push drugs or do drugs I ain't got no love for you. I wouldn't be impartial. . . . It's terrible but that's my bias." Juror 1355786 made additional statements indicating his clear bias in response to additional questioning by the prosecutor and defense counsel. The court clearly did not abuse its discretion in striking Juror 1355786 for cause.

## Tampering with Physical Evidence

Appellant also argues that the trial court erred in denying his motion for a directed verdict on the charge of tampering with physical evidence. The evidence at issue is the bat that the Appellant allegedly used to beat the victim to death. Expert testimony indicated that the victim had been beaten with a blunt force object. The co-defendant and the bystander who discovered the victim's body testified that they saw Appellant return to the van carrying the bat after his encounter with the victim. Police officers did not discover the bat

9

during their subsequent search of the van. Nor is there any indication that officers searched Appellant's home for the bat. Moreover, the Commonwealth did not offer any evidence of concealment by the Appellant. There was only evidence that Appellant was seen leaving the scene with a baseball bat that was never recovered.

We will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky. 1983) (emphasis added)). Our review is confined to the proof at trial and the statutory elements of the alleged offense. *Lawton v. Commonwealth,* 354 S.W.3d 565, 575 (Ky. 2011).

The two cases most on point are *McAtee v. Commonwealth,* 413 S.W.3d 608 (Ky. 2013) and *Mullins v. Commonwealth,* 350 S.W.3d 434 (Ky. 2011) In *Mullins,* we stated the following:

> If a defendant walks away from the scene in possession of evidence, this does not necessarily lead to a violation of the statute. When a crime takes place, it will almost always be the case that the perpetrator leaves the scene with evidence. If this amounted to a charge of tampering, the result would be an impermissible "piling on."

*Id.* at 443.

Accordingly, we reverse Appellant's conviction for tampering with physical evidence and vacate his sentence for that conviction.

## Additional Issues

Appellant complains that the trial court erroneously admitted improper evidence of prior crimes or bad acts. KRE 404(b). Evidence of prior crimes or bad acts must be relevant "for some purpose other than to prove the criminal disposition of the accused . . . ." *Meece v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). Evidence admissible under KRE 404(b) must also be relevant, probative, and not unduly prejudicial. *Bell v. Commonwealth*, 875 S.W.2d 882, 889-91 (Ky. 1994). *See also* KRE 401; 402; and 403. Appellant specifically takes issue with the following evidence: 1) he was a cage fighter; 2) his drug use; and 3) his prior instances of threats and domestic violence towards Hack. Each will be discussed in turn. We review for an abuse of discretion.

Appellant fails to cite any specific references by the Commonwealth during trial to Appellant's history as a cage fighter. However, the jury heard Appellant's recorded statement to police officers wherein he discussed his physical encounter with the victim as follows: "I'm a professional fighter . . . I connected, that means he's goin' out." This and any other evidence demonstrating that Appellant was a professional fighter or a cage fighter does not constitute evidence of a bad act. Moreover, it is relevant concerning the level of force Appellant needed to repel the victim whom Appellant claims pulled a gun on him.

Similarly, Appellant's drug use is relevant and probative. As we stated in *Adkins v. Commonwealth*, "[e]vidence of a drug habit, along with evidence of insufficient funds to support that habit, is relevant to show a motive to commit

11

a crime in order to gain money to buy drugs." 96 S.W.3d 779, 793 (Ky. 2003). Here, Appellant takes specific issue with his statement to the police that was played for the jury, wherein Appellant admitted to having a drug addiction. The Commonwealth presented evidence that Appellant was unemployed, had no means of income, no vehicle, and yet regularly used heroin and crack cocaine. This is proper 404(b) evidence. *See also, e.g., United States v. Cody,* 498 F.3d 582, 590-91 (6th Cir. 2007) (holding that the trial court did not abuse its discretion in allowing evidence of drug use as a motive for robbing a bank.).

Appellant also challenges the admissibility of evidence indicating prior domestic violence between himself and Hack. We have previously held that "[f]ear can affect a witness's testimony and, thus, if a witness has reason to fear someone about whom the witness is testifying, evidence of that fear is admissible for impeachment purposes." *Wilson v. Commonwealth,* 438 S.W.3d 345, 349 (Ky. 2014) (citation omitted). *See also* KRE 104(e); and KRE 607. Hack testified that she lied to the police because she was afraid of the Appellant and that he physically abused and threatened her. She also stated that she stayed with Appellant after the murder because she was afraid. Furthermore, the trial court provided an extensive admonition informing the jury that this evidence "has nothing to do with the elements of the crime of which [Appellant] is charged." There was no error here.

Lastly, Appellant takes issue with the video of his police interview in which he is wearing a jumpsuit and handcuffs. That video was played for the jury. We have previously affirmed convictions where the jury witnessed the

12

defendant in either shackles or handcuffs. *E.g.*, *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983). We cannot say that the trial court abused its discretion in admitting the video. The error, if any, was harmless. RCr 9.24.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court in regard to the convictions for murder, first-degree robbery, and theft by unlawful taking. We reverse and vacate the conviction of tampering with physical evidence.

All sitting. Cunningham, Hughes, VanMeter, and Venters, JJ., concur. Minton, C.J., dissents by separate opinion in which Keller and Wright, JJ., join.

MINTON, C.J., DISSENTING: I concur with the majority opinion's conclusion that the trial court erred by failing to instruct the jury on imperfect self-defense, but I respectfully disagree that this instructional error was harmless.

I wholeheartedly agree with the majority's assertion that, based on the facts of this case, the trial court's failure to allow an instruction for imperfect self-defense was a glaring omission. As a matter of law, both perfect and imperfect self-defense contemplate that a criminal defendant may subjectively believe that deadly force is necessary. The difference comes with the actual use of that force; imperfect self-defense recognizes that despite believing deadly force may be necessary, a defendant may be objectively mistaken as to the

13

degree of force needed to repel the perceived threat. But the jury in the present case only received an instruction for perfect self-defense.

As a natural logical progression, the majority correctly and succinctly recognizes that if Bryan's case presented sufficient evidence for which he was entitled to a perfect self-defense instruction, there must be a basis for allowing an imperfect self-defense instruction as well. An imperfect self-defense instruction would allow jurors the possibility simultaneously to accept that Bryan subjectively believed force was necessary to defend himself while also determining that the level of force he actually used was reckless or wanton. And invoking this justification categorically forecloses a conviction for murder and first-degree manslaughter.

Unfortunately, the majority opinion did not end there. Despite recognizing that the trial court erred by failing to include a possibly exculpatory jury instruction, the majority ultimately determines that this mistake amounted to harmless error. This, puzzlingly enough, is contrived out of the jury's decision to convict Bryan of murder. And this is further bootstrapped apparently by the jury's rejection of the complete self-defense instruction. Somehow, the combination of the murder conviction and rejection of the perfect self-defense instruction that was given satisfies the majority that a presumption that the jury unanimously and categorically rejected the belief that Bryan subjectively thought the use of deadly force was necessary.

But the problem with this analysis is that a reviewing court cannot know what the jury would do if given the opportunity to consider imperfect self-

14

defense, a defense that was justified by the facts presented to the jury. The majority opinion itself can easily contemplate a situation where a reasonable jury could find that Bryan sure enough did fear for his life in justifying the use of deadly force, while also recognizing he may have recklessly or wantonly held that belief. But the majority takes the position that because the jury seemingly did not believe the entirety of the perfect self-defense instruction, it rejected perforce the possibility of imperfect self-defense, as evidence by its decision to convict Bryan of murder. Perhaps the majority's logic is sound, but despite my efforts, I am unable to dismiss the fact that this error denied the jury the ability to consider all of the legal options supportable from the evidence. And accordingly, I am unable to say with confidence the outcome would remain the same had the jury received the alternate instruction.

Under the majority's analysis, I am not sure when it would ever be reversible error for a court to fail to include an imperfect self-defense instruction. And because I am unwilling to take that leap, I must respectfully dissent.

Keller and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph Todd Henning
Assistant Attorney General

Bryan Darwin Morrow
Assistant Attorney General