# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000133-MR

TERRY O'BANNON          APPELLANT

ON APPEAL FROM MUHLENBERG CIRCUIT COURT
V.          HONORABLE BRIAN WIGGINS, JUDGE
NOS. 15-CR-00156 AND NOS. 15-CR-00234

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A circuit court jury convicted Terry O'Bannon[1] of first-degree assault, tampering with physical evidence, and being a first-degree persistent felony offender, recommending a sentence of twenty years, which the trial court accepted. Terry appeals the resulting judgment as a matter of right[2], raising three issues for review: the trial court's denial of Terry's motions for directed verdict on his charges of (1) assault, (2) tampering with physical evidence, and (3) persistent felony offender. For the reasons stated in this opinion, we find no error in the trial court's rulings and affirm the judgment.

---

[1] We will refer to Terry O'Bannon as "Terry," because Terry's son, Tyson O'Bannon, is also mentioned several times in this opinion.

[2] Ky. Const. § 110(2)(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND.,

Terry O'Bannon, the defendant in this case, Tyson O'Bannon, Terry's son, and Whitney Smith, Tyson's girlfriend, stopped to get gas. Tyson, the driver of the car, pulled up to one of the pumps. As Terry got out of the car to pump the gas, he realized Tyson pulled up to the pump on the wrong side of the car, so he told Tyson to turn the car around. As Tyson turned the car around, Herbert Yates pulled in at the same pump.

From this point forward, the facts of this case are in dispute. What can be conclusively ascertained from the record is that a verbal exchange immediately ensued between Yates and Terry. Terry directed Tyson to drive to a different gas pump, and a further verbal exchange occurred as Yates and Terry pumped gas into their vehicle.

Yates reached inside his car for something and Terry and Tyson believed he reached for a firearm. Yates admitted that he owns a firearm, that he did not have it with him on that occasion. After filling their car, Terry and Tyson then drove away. As they drove away, Yates called 911 and reported Terry and Tyson for reckless driving.

Terry and Tyson returned to the gas station moments later, claiming that they wanted to make sure they had paid for the gas. When Terry stepped out of the vehicle, another verbal confrontation with Yates occurred, eventually turning into a physical altercation. Numerous witnesses gave conflicting testimony at trial about the altercation, including who was the initial aggressor and what happened during the fight. At some point during the fight, Terry

2

produced a knife and cut Yate's arm, causing a seven to eight-inch laceration to the bone, cutting several muscles and severing the ulnar nerve. As Terry and Tyson drove away, Terry threw his bloody shirt out of the car.

Terry admitted at trial that he knew police were looking for him after leaving the gas-station melee, and he turned himself in four days later.

Eleven days after the incident, Whitney Smith, Tyson's girlfriend, gave a statement to the police in which she stated that Terry threw a knife out the car window, but at trial she stated that Terry threw his bloody shirt out of the window and she assumed the knife was inside the shirt. When the responding officer initially arrived at the scene of the crime, he failed to locate the knife at the gas station. After Smith gave her statement to the police, officers again searched unsuccessfully for the knife at the gas station. On cross-examination at trial, Terry stated that Tyson had purchased a knife for him that was very similar to replace one that he had "lost."

At the close of the Commonwealth's case-in-chief, the trial court denied Terry's motion for a directed verdict on the assault charge. At the close of Terry's case-in-chief, Terry made a motion for directed verdict on the tampering-with-physical-evidence charge, stemming from the accusation that Terry had attempted to dispose of the knife used to cut Yates by throwing it out the window. The trial court denied that motion.

Regarding the persistent felony offender charge, Terry did not move for directed verdict at the close of the Commonwealth's case or his own case-in-chief in the penalty phase of the trial. While the trial court was reading the

3

persistent felony offender sentencing instructions to the jury, the Commonwealth asked to approach the bench. The Commonwealth then moved for leave of court to reopen the evidence because the Commonwealth recognized that it had failed to establish when Terry had been placed on parole or probation, an element necessary to prove the charge of persistent felony offender. Terry objected to allowing the Commonwealth to reopen the proof, but the trial court overruled the objection and allowed the Commonwealth to recall its witness to establish when Terry was placed on parole or probation. Terry then moved for directed verdict on the persistent felony offender charge, which the trial court denied.

The jury found Terry guilty of first-degree assault, tampering with physical evidence, and of being a first-degree persistent felony offender. The jury recommended a twenty-year sentence, which the trial court accepted and entered the judgment accordingly. Terry then appealed to this Court.

## II. ANALYSIS.

As a preliminary matter, Terry sufficiently preserved all three issues before this Court. Because all three issues involve the alleged failure of the trial court to grant a directed verdict, "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[3] So we shall only overturn the trial court's denial of Terry's motions

---

[3] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983) (quoting *Trowel v. Commonwealth*, 550 S.W.2d 530, 533 (Ky. 1977)).

4

for directed verdict if it was clearly unreasonable for the jury to find Terry guilty of his charges.

## A. Assault Charge.

Terry argues that, based on the evidence adduced at trial, it was clearly unreasonable for the jury to find him guilty of first-degree assault because the jury should have found that he was privileged to act in self-protection and in the protection of others.

KRS 503.050(1) and (2), the statute establishing the self-protection defense, allows for the use of physical or deadly force by a defendant upon another person when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical, or deadly, force by the other person. And KRS 503.070(1-2), the statute establishing the third-party protector defense, allows for the use of physical and even deadly force by a defendant upon another person if the defendant believes that such force is necessary to protect a third person against the use or imminent use of unlawful physical or deadly force. But KRS 503.060(3) prevents a defendant from invoking the self-protection defense if the defendant was the initial physical aggressor, unless: (1) the initial aggressor used non-deadly physical force and was responded to with deadly force; or (2) the initial aggressor withdraws from the encounter and effectively communicates to the other person his intent to do so, but the other individual continues or threatens the use of unlawful physical force.

5

In this case, the trial court instructed the jury on first-degree assault, second-degree assault, fourth-degree assault, self-protection, protection of another, and initial aggressor. Numerous witnesses provided testimony supporting the finding of the jury that the self-protection and protection-of-others defenses did not apply to justify Terry's actions. Although other witnesses provided testimony that would have supported a finding that Terry acted in self-defense or for the protection of another, this does not make the findings by the jury unreasonable.

Summarily, no matter the jury's verdict under these instructions, we would be constrained to recognize the jury's verdict as reasonable. This case is a classic example of the reason our legal system entrusts the jury with the important task of determining a defendant's guilt or innocence. This case involves conflicting accounts of the day's events from the point of view of the defendant, victim, and numerous other witnesses. Many of the accounts differ, sometimes dramatically, from each other. To put this case in perspective: the defendant, the victim, and six other witnesses provided testimony as to the day's events, ranging from accounts that Terry was the initial aggressor, to Yates being the initial aggressor, to Tyson joining in the fight and actually acting as the initial aggressor, to Terry believing Yates possessed a firearm even though it appears Yates did not, to Terry and Tyson throwing several punches before Yates even reacted, to both Yates and Terry egging each other on in the fight, and the differing accounts continue.

We must ultimately conclude from the evidence that the jury did not act unreasonably when it found Terry guilty of first-degree assault. The jury heard testimony from witnesses stating that Terry was the initial aggressor and escalated the fight by using a knife. The jury also heard testimony from Terry and Tyson that they believed Yates had a gun; however, the jury simply did not believe Terry and Tyson, as Terry's conviction reflects. It is the jury's prerogative to act as the ultimate fact-finder and determinant of a witness's credibility[4], and because the jury's conclusion is adequately factually supported in this record, we cannot deem it to be unreasonable. Based on all the evidence adduced at trial, the jury's rejection of the self-protection and protection-of-others defenses was not unreasonable. So we affirm the trial court's decision to deny Terry's motion for directed verdict regarding his assault charge.

## B. Tampering with Physical Evidence Charge.

Terry argues that the jury unreasonably convicted him of tampering with physical evidence, specifically, that he discarded the knife he used to cut Yates by throwing it out the car window.

This charge stemmed from Whitney Smith's statement to police that she saw Terry throw the knife out the window as their car was leaving the gas station. But at trial, Smith stated that she actually saw Terry throw his bloody

---

[4] *Potts v. Commonwealth,* 172 S.W.3d 345, 349-51 (Ky. 2005).

shirt out the window and simply assumed that the knife was inside. As stated, two separate investigations by officers failed to locate the knife.

At trial, the defense introduced as evidence what Terry claimed to be the actual knife he used to cut Yates. Terry testified that he kept the knife in his pants pocket after the altercation. But on cross examination, Terry stated that Tyson had bought a knife for him that was very similar to the one that he had "lost." It appears that the only proof that the knife introduced at trial was the same one as the one used to cut Yates is Terry's testimony. Based on the evidence adduced at trial, the jury found Terry guilty of tampering with evidence by throwing the knife from the vehicle.

KRS 524.100 provides that a person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he either: (1) destroys, mutilates, conceals, removes, or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; or (2) fabricates any physical evidence with intent that it be introduced in the official proceeding or offers any physical evidence, knowing it to be fabricated or altered.

Our decision in *Mullins v. Commonwealth*[5] provides guidance on this issue. In *Mullins*, we stated, "The Commonwealth cannot bootstrap a tampering charge onto another charge simply because a woefully inadequate effort to

---

[5] 350 S.W.3d 434 (Ky. 2011).

locate the evidence was made by the police."[6] Additionally, we stated that a defendant walking away from the scene of the crime in possession of evidence does not necessarily lead to a violation; in fact, charging someone with a violation of tampering with physical evidence "would be an impermissible 'piling on'" of charges.[7] However, we went on to say, "This is not to say that failure to locate evidence means that a defendant cannot be charged and convicted of tampering when there is evidence of an active attempt by the defendant that demonstrated intent to impair the availability of the evidence."[8]

Based on the evidence adduced at trial, and our decisions in *Mullins* and *Nourse*, we cannot say it was unreasonable for the jury to find that Terry tampered with evidence by throwing the knife used to cut Yates out the window. As *Mullins* states, even though officers were unable to find the knife that Terry threw out the window, the officers' searches were not claimed to be inadequate, and other evidence exists to support a finding that Terry did throw the knife out the window in an attempt to "impair the availability" of the knife. Whitney Smith's original statement to the police that Terry threw the knife out the window, coupled with Terry admitting on cross examination that Tyson had purchased him a knife that was very similar to replace one that he had "lost," and the fact that Terry's own testimony was the only proof Terry asserted, and now asserts, to substantiate his claim that the knife introduced at trial is the

---

[6] *Id.* at 444.

[7] *Id.* at 443.

[8] *Id.* (citing *Commonwealth v. Nourse*, 177 S.W.3d 691 (Ky. 2005) (throwing bullet casings down a drain)).

same knife he used to cut Yates, all could reasonably convince a jury that Terry really did throw the knife out the window that day, even though police were unable to locate it. As such, the jury's findings were not unreasonable, and we affirm the trial court's decision to deny Terry's motion for directed verdict on the tampering-with-physical-evidence charge.

## C. Persistent Felony Offender.

Terry argues that the trial court erred by denying his motion for directed verdict regarding the persistent felony offender charge. It appears that Terry's argument here is actually two-fold: (1) the trial court abused its discretion by allowing the Commonwealth to reopen its case upon discovering that it had failed to establish when Terry had been placed on parole or probation, an essential element of his charge of persistent felony offender; and (2) the trial court erred when it denied Terry's motion for directed verdict on the persistent felony offender charge after the Commonwealth's witness testified to establish when Terry was placed on parole or probation.

During the Commonwealth's case-in-chief during the penalty phase, the Commonwealth called the circuit clerk as a witness to establish the elements of the persistent-felony-offender charge. The clerk testified that Terry was convicted of possession of a firearm by a convicted felon on October 2, 2009. But, the Commonwealth failed to ask the clerk when Terry was discharged from parole or probation on the 2009 conviction. This meant that the Commonwealth failed to prove the persistent-felony-offender element that Terry "was discharged from parole or probation from the sentence imposed on him

10

pursuant to said prior conviction no more than five (5) years before August 12, 2015."[9]

After both sides had closed their cases in the penalty phase, the trial court read the sentencing instructions. As the trial court read the persistent felony offender sentencing instructions to the jury, the Commonwealth apparently realized it had failed to ask the clerk when Terry was placed on probation or parole and asked the court to approach the bench. At the bench, the Commonwealth moved to reopen the case because it had failed to establish when Terry had been placed on parole or probation, to which Terry objected. The trial court granted the Commonwealth's motion.

The clerk was then recalled and testified that Terry was released on supervised release for three years, within the five-year time period prescribed by the persistent-felony-offender offense. Terry then moved for directed verdict, which was denied by the trial court. The jury found Terry guilty of being a first-degree persistent felony offender.

Kentucky Rule of Criminal Procedure (RCr) 9.42 prescribes the order of trial. Of particular relevance in this case, RCr 9.42(e) states, "The parties respectively may offer rebutting evidence, unless the court, for good reason in furtherance of justice, permits them to offer evidence-in-chief." We review

---

[9] *See* KRS 532.080(3)(c).

decisions by the trial court of this nature under an abuse of discretion standard.[10]

In both *Marshall* and *Haynes*, we held that the trial court did not abuse "its broad discretionary power" by permitting the introduction of evidence-in-chief, after both sides had closed their cases, to establish that the previous crimes committed by the defendants were felonies.[11] We termed the adjudication of a persistent felony offender charge a "bifurcated" stage of a defendant's criminal proceedings, separate from adjudication of the underlying substantive criminal charge, like robbery.[12]

Terry relies on *Davis v. Commonwealth*[13] in support of his argument. In *Davis*, the trial court allowed the Commonwealth to reopen its case to provide previously unavailable testimony supporting a murder charge conviction during rebuttal and after the close of all the evidence. Terry relies on our following statements in *Davis*:

> While a party should not normally be permitted to offer additional testimony after announcing the conclusion of its evidence, and certainly should be precluded from introduction of evidence-in-chief after announcing that no rebuttal evidence will be presented, we cannot overlook the probative nature of the evidence so offered and its prior unavailability. If the record demonstrated any bad faith on the part of the Commonwealth, we would not hesitate to hold that the admission of such evidence amounted to an abuse of the trial court's discretion. This not being the case, however, we

---

[10] *Marshall v. Commonwealth*, 625 S.W.2d 581, 583 (Ky. 1981); *Haynes v. Commonwealth*, 625 S.W.2d 575, 576 (Ky. 1981).

[11] *Marshall*, 625 S.W.2d at 583; *Haynes*, 625 S.W.2d at 576.

[12] *Marshall*, 625 S.W.2d at 583; *Haynes*, 625 S.W.2d at 576.

[13] 795 S.W.2d 942 (Ky. 1990).

find no abuse of the trial court's discretion in its application of RCr 9.42(e).[14]

We find that the situation in this case is more akin to our holdings in *Marshall* and *Haynes* than in *Davis*. Although our statements in *Davis* would seem to suggest a preclusion of the Commonwealth's evidence-in-chief in this case, our statements were made in the context of attempting to admit evidence-in-chief during rebuttal and after the close of the case for the purpose of obtaining a conviction for intentional murder. In this case, just like in *Marshall* and *Haynes*, the trial court permitted the Commonwealth to reopen its case for the purpose of permitting evidence relating to a persistent-felony-offender charge, not the underlying substantive criminal charge of assault. So because of the trial court's traditional broad discretion in this regard, and because of our holdings in *Marshall* and *Haynes*, we find that no error occurred with respect to the trial court's decision to allow the Commonwealth to reopen its case for the purpose of providing evidence-in-chief as to when Terry had been placed on parole or probation.

Terry's argument that the trial court erred when it denied his motion for directed verdict on this charge is supported by this same rationale. In addition, the Commonwealth established all the necessary elements of a first-degree persistent-felony-offender conviction. So the trial court did not err when it denied Terry's motion for a directed verdict because it was not unreasonable for the jury to find Terry guilty of being a persistent felony offender.

---

[14] *Id.* at 947.

13

## III.    CONCLUSION.

For the reasons stated above, we find no error in the trial court's rulings in this case and affirm the judgment.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Mark Barry
Assistant Attorney General